FRANK E. EMORY, DORIS JONES, CATHERINE TAYLOR, HAZEL LEWIS, LOUVENIA ELLIOTT, A.P. COLEMAN, WILLIE L. ELLIOTT, GEORGE LEACH, CLEVELAND LEWIS, SR., ATHALENE D. EMORY, WILLIAM JAMES, AND THELMA JOHNSON, PLAINTIFFS v. JACKSON CHAPEL FIRST MISSIONARY BAPTIST CHURCH AND DARRYL T. CANADY, DEFENDANTS

No. COA03-1293

(Filed 20 July 2004)

**1. Churches and Religion— subject matter jurisdiction— interpretation of church bylaws—ecclesiastical matters**

The trial court did not have subject matter jurisdiction to interpret the notice provisions of church bylaws and correctly dismissed the action where continuing would have required the court to delve into ecclesiastical matters regarding the church's customs and its interpretation of its bylaws.

**2. Churches and Religion— subject matter jurisdiction— church bylaws—property rights tangentially affected**

The trial court properly dismissed an action involving the incorporation of a church for lack of subject matter jurisdiction where plaintiffs' property rights were affected only tangentially.

Appeal by plaintiffs from order entered 2 July 2003 by Judge Frank Brown in Wilson County Superior Court. Heard in the Court of Appeals 9 June 2004.

*Hunton & Williams LLP, by Matthew P. McGuire and Ray A. Starling, for plaintiffs-appellants.*

*Law Office of Earl T. Brown, P.C., by Earl T. Brown, for defendants-appellees.*

TYSON, Judge.

Frank E. Emory, Doris Jones, Catherine Taylor, Hazel Lewis, Louvenia Elliott, A.P. Coleman, Willie L. Elliott, George Leach, Cleveland Lewis, Sr., Athalene D. Emory, William James, and Thelma Johnson (collectively, "plaintiffs") appeal from an order granting Jackson Chapel First Missionary Baptist Church's ("Jackson Chapel") and Darryl T. Canady's (collectively, "defendants") motion to dismiss for lack of subject matter jurisdiction. We affirm.

## I. Background

Jackson Chapel is a Missionary Baptist church located in Wilson, North Carolina. Darryl T. Canady has served as Jackson Chapel's pastor since 1994. Jackson Chapel was established in 1872, and operated for more than 130 years as an unincorporated association, not subject to any outside religious or denominational body or organization. All decision making authority was vested within the Church's congregation.

In 1991, the congregation adopted comprehensive bylaws ("1991 Bylaws") to establish and govern the organization, structure, administration, discipline, and doctrine of the church and its members. The 1991 Bylaws contained procedures which governed Jackson Chapel's membership, officers, finances, committees, and meetings. Article VI, Section 5, of the 1991 Bylaws, dealt specifically with meetings of the congregation:

Section 5. THE CALL FOR REGULAR OR SPECIAL MEETINGS.

The pastor may, with the concurrence of the Boards of Deacons and Trustees make a call from the pulpit for a special business meeting, provided notice is given at least one week in advance. The object of the meeting must be clearly stated in the notice.

Article VIII, entitled "AMENDMENTS" states, "These by-laws may be amended by two-thirds (2/3) affirmative vote of the members present at a meeting, provided the purpose has been announced at least one week in advance."

On 18 May 2003, a business meeting was held at Jackson Chapel. Plaintiffs contend this meeting was a "special" meeting which required advance notice pursuant to Article VI, Section 5, of the 1991 Bylaws. Defendants claim this was a regularly scheduled quarterly meeting preceded by announcement in the church bulletin and from

**EMORY v. JACKSON CHAPEL FIRST MISSIONARY BAPTIST CHURCH**

[165 N.C. App. 489 (2004)]

the pulpit during four Sundays preceding its occurrence. At this meeting, a substantial majority of the members present voted to authorize Jackson Chapel to submit Articles of Incorporation to the North Carolina Secretary of State for filing. On 30 May 2003, the Articles of Incorporation were accepted by the North Carolina Secretary of State. The filing and acceptance incorporated Jackson Chapel as a non-profit religious corporation pursuant to N.C. Gen. Stat. § 55A.

Three weeks after the Articles of Incorporation were filed, plaintiffs commenced a lawsuit alleging that the decision to incorporate Jackson Chapel was made at a meeting held in violation of the notice requirements of the 1991 Bylaws. Defendants answered and moved to dismiss for lack of subject matter jurisdiction. The trial court found that the suit involved the interpretation of the 1991 Bylaws of Jackson Chapel and granted defendants' motion to dismiss for lack of subject matter jurisdiction. Plaintiffs appeal.

## II. Issue

The sole issue on appeal is whether the trial court erred in granting defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure.

## III. Motion to Dismiss for Lack of Subject Matter Jurisdiction

This Court reviews *de novo* whether a trial court's grant of a motion to dismiss for lack of subject matter jurisdiction was proper. *State ex rel. Pilard v. Berninger*, 154 N.C. App. 45, 52, 571 S.E.2d 836, 841 (2002), *disc. rev. denied*, 356 N.C. 694, 579 S.E.2d 100 (2003) (citing *Country Club of Johnston County, Inc. v. United States Fidelity & Guar. Co.*, 150 N.C. App. 231, 238, 563 S.E.2d 269, 274 (2002)). To determine whether jurisdiction over the subject matter exists, the court may consider and weigh matters outside the pleadings. *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978).

## A. Ecclesiastical Matters

[1] Plaintiffs argue none of the issues raised would require the trial court to resolve ecclesiastical questions or to interpret church doctrine, and assert the trial court should exercise subject matter jurisdiction. We disagree.

Courts have expressed an increasing reluctance to become involved in church disputes:

> The prohibition on judicial cognizance of ecclesiastical disputes is founded upon both establishment and free exercise clause concerns. By adjudicating religious disputes, civil courts risk affecting associational conduct and thereby chilling the free exercise of religious beliefs. Moreover, by entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks 'establishing' a religion.

*Crowder v. Southern Baptist Convention*, 828 F.2d 718, 721 (11th Cir. 1987). Our Supreme Court has held that a trial court's exercise of jurisdiction is improper only where "purely ecclesiastical questions and controversies" are involved. *Conference v. Creech*, 256 N.C. 128, 140, 123 S.E.2d 619, 627 (1962).

> An ecclesiastical matter is one which concerns doctrine, creed, or form of worship of the church, or the adoption and enforcement within a religious association of needful laws and regulations for the government of membership, and the power of excluding from such associations those deemed unworthy of membership by the legally constituted authorities of the church; and all such matters are within the province of church courts and their decisions will be respected by civil tribunals.

*Conference v. Piner*, 267 N.C. 74, 77, 147 S.E.2d 581, 583 (1966), *overruled in part by Atkins v. Walker*, 284 N.C. 306, 200 S.E.2d 641 (1973) (quoting *Conference v. Miles*, 259 N.C. 1, 10-11, 129 S.E.2d 600, 606 (1963)). "Freedom of religion means not only that civil authorities may not intervene in the affairs of the church; it also prevents the church from exercising its authority through the State." *Id.* at 78, 147 S.E.2d at 583.

After a complete review of the record, we disagree with plaintiffs' contention that the trial court can exercise subject matter jurisdiction to decide whether defendants provided sufficient notice to plaintiffs of a church meeting as required by the 1991 Bylaws without delving into matters of ecclesiastical governance.

Numerous ambiguities exist in the 1991 Bylaws, conflicts remain between both parties' interpretations of the 1991 Bylaws, and long-established church customs exist that may alter the interpretation of the notice requirements listed in the 1991 Bylaws. Both parties disagree regarding what type of meeting was actually held. Plaintiffs argue that a special meeting was called, which required a

**EMORY v. JACKSON CHAPEL FIRST MISSIONARY BAPTIST CHURCH**

[165 N.C. App. 489 (2004)]

two-thirds vote of all trustees and one week notice. Defendants contend that the action was taken at a regular quarterly meeting, which was noticed from the pulpit on the Sunday before the meeting was to be held, and published in the church bulletin for four Sundays prior to the meeting.

Evidence from the record shows that all actions by the church were taken prior to the filing or issuance of a non-profit corporate charter by the North Carolina Secretary of State. Further, church customs and practices exist on how and when church meetings are called, which deviate from the 1991 Bylaws' requirements. These customs and practices have been used by the church since the adoption of the 1991 Bylaws. The trial court would be required to look beyond merely the words of the 1991 Bylaws to determine whether proper notice was given to plaintiffs. There is also a dispute regarding the type of meeting held. The trial court would be required to initially determine what type of meeting was held and look beyond the plain language of the 1991 Bylaws.

As the trial court would be required to delve into "ecclesiastical matters" regarding how the church interprets the 1991 Bylaws' notice requirements and types of meetings, the trial court properly dismissed plaintiffs' action for lack of subject matter jurisdiction. *Piner*, 267 N.C. at 77, 147 S.E.2d at 583. Jackson Chapel determined, through a super-majority vote of its members present at the meeting, that it complied with all notice requirements. Its interpretation of the notice requirements based on long-standing customs and practices of the church must be given judicial deference. *See Braswell v. Purser*, 282 N.C. 388, 393, 193 S.E.2d 90, 93 (1972); *see also Jones v. Wolf*, 443 U.S. 595, 602, 61 L. Ed. 2d 775, 784 (1979), *cert. denied*, 444 U.S. 1080, 62 L. Ed. 2d 763 (1980); *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709-15, 49 L. Ed. 2d 151, 162-64 (1976), *cert. denied*, 443 U.S. 904, 61 L. Ed. 2d 872 (1979); *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 16-17, 74 L. Ed. 131, 137 (1929); *Watson v. Jones*, 80 U.S. 679, 727-29, 20 L. Ed. 666, 676-77 (1871).

### B. Violation of Plaintiffs' Contractual and Property Rights

[2] Plaintiffs also assert their contractual and property rights were violated by the failure of the church to follow the procedures set forth in the 1991 Bylaws. We disagree.

North Carolina civil courts may determine church controversies concerning property. In the seminal case of *Atkins v. Walker*, Justice

Lake wrote, "[i]t nevertheless remains the duty of the civil courts to determine controversies concerning property rights over which such courts have jurisdiction and which are properly brought before them, notwithstanding the fact that the property is church property." 284 N.C. at 318, 200 S.E.2d at 649. "Where civil, contracts, or property rights are involved, the courts will inquire as to whether the church tribunal acted within the scope of its authority and observed its own organic forms and rules." *Creech*, 256 N.C. at 140-41, 123 S.E.2d at 627.

Here, plaintiffs argue that their contractual and property rights were violated by the alleged failure of the church to follow its own procedures and bylaws and the court should intervene in the affairs of the church. At the heart of this matter is a change in the structure of the church from an unincorporated association to a non-profit corporation. Plaintiffs do not assert that their membership or use of property rights will be affected by this change in organizational structure. Their complaint only alleges that under the corporate structure the corporation's bylaws would be adopted by a simple majority vote and not by the two-thirds vote required by the 1991 Bylaws of the unincorporated association.

We have previously ruled on church controversies concerning property, however, none involve the type of property rights plaintiffs assert in this matter. *See Looney v. Community Bible Holiness Church*, 103 N.C. App. 469, 473, 405 S.E.2d 811, 813 (1991) (deciding which faction retained control of the physical property of the church and land); *Church v. Church*, 27 N.C. App. 127, 218 S.E.2d 223, *cert. denied*, 288 N.C. 730 (1975) (examining church operations to determine if trustees properly conveyed the church property); *Trotter v. Debnam*, 24 N.C. App. 356, 210 S.E.2d 551 (1975) (reviewing superior court's contempt order for violation of restrictions on use of church building and land).

The reasoning of the Eleventh Circuit Court of Appeals in *Crowder* is persuasive, even though that case was decided under Georgia law. 828 F.2d 718. In *Crowder*, delegates to the Southern Baptist Convention challenged the validity of the procedure by which members of the Convention's Committee on Boards were selected. In affirming the dismissal of the plaintiff's action, the Eleventh Circuit stated:

> [T]he controversy bears only a tangential relationship to property rights. Although appellants contend that the SBC bylaws create

**HARRIS v. TRI-ARC FOOD SYS., INC.**

[165 N.C. App. 495 (2004)]

enforceable contract rights under Georgia law, the denial of these alleged rights is unrelated to any question of ownership of property that would give rise to a state interest in assuming a prompt resolution of the controversy by a civil court forum.

*Crowder*, 828 F.2d at 726-27.

Similarly, the claims of plaintiffs in this case only tangentially affect property rights. The courts of this State should not intervene in a question of whether defendants are organized as an unincorporated association or a non-profit corporation. Plaintiffs have failed to assert a substantial property right which has been affected by the incorporation of the church. The trial court properly dismissed the complaint based upon lack of subject matter jurisdiction.

### IV. Conclusion

Plaintiffs failed to show the trial court erred in dismissing their action for lack of subject matter jurisdiction. The trial court would be required to delve into "purely ecclesiastical matters" in violation of the First Amendment as applicable to the States through the Fourteenth Amendment. U.S. Const. amend. I, XIV; *see Creech*, 256 N.C. at 140, 123 S.E.2d at 627. Plaintiffs also failed to show a substantial property right which has been affected by the incorporation of the church. The trial court's order is affirmed.

Affirmed.

Judges BRYANT and STEELMAN concur.