MOORE, Chief Justice
(dissenting).
I dissent from the decision of the Court denying the petition for a writ of mandamus because I believe that the petitioners have established a clear legal right to a dismissal of this action, which involves an ecclesiastical-dispute. The issue is whether a circuit court may judicially enforce the purported will of a church’s highest governing authority or instead allow to remain in church leadership those whom the church purports to remove. The circuit court may do neither.

I. The Jurisdictional Separation of Church and State

Courts refrain from inserting themselves into disputes between rival church factions. Davis v. Ross, 255 Ala. 668, 671, 53 So.2d 544, 546 (1951). “As is the case with all churches, the courts will not assume jurisdiction, in fact ha[ve] none, to resolve disputes regarding their spiritual or ecclesiastical affairs.” Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746, 748 (Ala.1976).[4] If a. church’s decision that a plaintiff seeks to have enforced implicates an ecclesiastical dispute, the courts are powerless to- intervene, as I discussed in my special writings in Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331, 354 (Ala.2002) (Moore, C.J., dissenting), and Burns Church, Inc. v. Alabama District Council of Assemblies of God, Inc., 168. So.3d 1188, 1192 (Ala.2014) (Moore, C.J., dissenting).
I noted in my Special-writing in Yates, 847 So.2d at 354, that the jurisdictional separation of church and state ultimately originates from an acknowledgment of the sovereignty of God. Historically, church-state separation was a tenet of English common law, which later passed into American jurisprudence and became incorporated into.the religion clauses of the First Amendment. 847 So.2d at 352-53 (Moore, C.J., dissenting). Church-state separation, as part of the.common law of England, which our legislature expressly adopted as “the rule of decisions,” binds the Alabama judiciary. See § 1-3-1, Ala. Code 1975.[5]

II. An Internal Church Dispute

The respondents, the plaintiffs below, argue that this case is about a mere “pro *446 cedural matter” and not an ecclesiastical matter. However, any decision by the circuit court regarding the ability of the petitioners to serve as deacons in the church necessarily requires the court to resolve a number of antecedent issues that are inextricably intertwined with church governance.[6] These issues are, at a minimum, (1) the meaning of the church bylaws, (2) the structure of church governance, and (3) the propriety of the procedure leading to the votes to remove the petitioners from the board of deacons. The circuit court’s preliminary injunction illustrates the danger inherent in determining a question of church leadership.

A. Construing Church Bylaws

Resolving this dispute would require the judiciary to construe the bylaws of Greenwood Missionary Baptist Church. In its order entering a preliminary injunction in the instant case, the circuit court acknowledged that the provision in the bylaws for removal of deacons is ambiguous, stating that “[t]he Bylaws do not give this Court any guidance as to what exactly that sentence means.” Nevertheless, the court disregarded the petitioners’ allegation that only the pastor or the board of deacons may call a meeting to remove a deacon because “[t]hat language does not appear in the Bylaws,” The court interpreted the bylaws to determine that the plaintiffs showed a likelihood of success on the merits. However, to do so is to invade the autonomy of Greenwood Missionary Baptist Church' to have the final say on the meaning of its own rules of governance. The United States Supreme Court warned courts against presuming to interpret church-governing documents:
"It may be said here ... that the laws of the church do not authorize the particular form of proceeding adopted.... But it is easy to see that if the civil courts are to inquire into all these matters, the whole subject of the doctrinal theology, the usages and customs, the written laws, and fundamental organization of every religious denomination may, -and must, be examined into with minuteness and care, for they would become, in almost every case, the criteria by which the validity of the ecclesiastical decree would be determined in the civil court. This principle would deprive these bodies of. the right of construing their own church laws, would open the way to all the evils ... and would,, in effect, transfer to the civil courts where property rights were concerned the decision of all ecclesiastical questions.”
Watson v. Jones, 80 U.S. (3 Wall.) 679, 733-34 (1871) (second emphasis added). “‘Since the opinion in Watson, the Supreme Court has consistently refused to address church controversy.’ ” Ex parte Bole, 103 So.3d 40, 55 (Ala.2012) (quoting Yaggie v. Indiana-Kentucky Synod Evangelical Lutheran Church in America, 860 F.Supp. 1194, 1197 (W.D.Ky.1994)).
Construction of a church-governing document by the court is particularly invasive when the document is ambiguous. See Serbian E. Orthodox Diocese for United States of America and Canada v. Milivojevich, 426 U.S. 696, 723, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (“The constitutional provisions of the Ameriean-Canadian Diocese were not so express that the civil courts could enforce them without engaging in a searching and therefore impermissible inquiry into church polity.”). Ad *447 ditionally, “canon law [is] admittedly not always consistent.” 426 U.S. at 718. Resolving such issues and applying church law to a church dispute is simply beyond the competence of civil courts. 426 U.S. at 714 n. 8.[7]

B. Resolving Issues of Church Governance

Not only would a resolution of this case require the circuit court to construe church-governing documents, but, having done so, the court would necessarily have to determine ecclesiastical questions of church polity. Specifically, the court must determine the nature of the governmental structure of Greenwood Missionary Baptist Church, the entity or entities exercising ultimate authority over the church, and the interrelationship between the congregation and the board of deacons, both of which purport to act under color of church law. In short, this action requires the court to referee a power struggle between the congregation and. three deacons, with the pastor caught in the middle.
In a case involving an internal church dispute over the ownership of real property, the United States Supreme Court, in the following probing -analysis, explained the inherent pitfalls:
“Under [a rule requiring civil courts to defer to the authoritative resolution of a dispute within the church,] civil courts would always be required to examine the polity and administration of a church to determine which unit of government has ultimate control over church property. In some cases, this task would not prove to be difficult. But in others, the locus of control would be ambiguous, and 'a careful examination of the constitutions of the general and local church, as well as other relevant documents, [would] be necessary to ascertain the form' of governance adopted by members of the religious association.’ ... In such cases, the 'suggested rule would appear to require ‘a searching and therefore impérmíssible inquiry into church polity.’ Serbian Orthodox Diocese, 426 U.S. at 723, 96 S.Ct. 2372.”
Jones v. Wolf, 443 U.S. 595, 605, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979) (emphases added).[8] Contrary to .the plaintiffs’ suggestion that matters of church governmental. procedure are within the cognizance of *448 the courts, analyzing such procedure entangles the courts in issues of an inherently ecclesiastical nature.
In briefing before this Court, the parties disputed whether, language contained in the bylaws precludes members of the congregation from suing each other. Neither this Court nor the circuit court is competent to answer that question or any other question about the meaning of a religious document. On the other hand, churches are equipped to apply articles of faith. Setting secular standards for construing the governing documents of religious organizations is as perilous an endeavor as setting standards for evaluating claims of clergy malpractice: '.
“[D]ifferent churches and different pastors will teach and apply different unerstandings of doctrine.”

"....

“... [I]f the civil authority were even to attempt to establish a standard for judging clergy malpractice, the state would unavoidably entangle itself in matters of theology and church doctrine that are not only outside its proper jurisdiction, but also in violation of the establishment clause of Art. I, § 3, of the Alabama Constitution of 1901, which is designed to protect the right of the people of Alabama to' worship God and otherwise to fulfill religious duties without interference by civil government authorities, including judicial authorities.”
Bailey v. Faulkner, 940 So.2d 247, 259 (Ala.2006) (Parker, J., concurring). When confronted with a request to restore an elder whom a church had expelled, this Court stated:
“If the civil courts may in this instance interfere to question the exclusion of petitioner, they may do so, in any instance where a member of that or any other church is removed, on the allegations of irregular and unfair proceedings for the purpose. This would open a door to untold evils in the administration of church affairs, not consistent with the principles of religious freedom as recognized in this country, where there is no established church or religion, where every man is entitled to hold and express with freedom his own religious views and convictions, and where the separation of State and Church is so deeply intrenched in our constitutions and laws.” ' *
Hundley v. Collins, 131 Ala. 234, 243, 32 So. 575, 578 (1902), (emphasis added). When the judiciary purports to interpret church-governing documents, it. necessarily excludes all religious implications from the text, regardless of the church’s intent in adopting the text, in a manifest affront to religious freedom.

C. Resolving Procedural Propriety of Church Meeting .

In addition to determining church polity, a resolution of this matter by. the circuit court would also require the court to scrutinize whether the meeting held by the congregation at which the deacons were removed was proeedurally proper.[9] Such *449 an inquiry is unconstitutional for reasons similar to those previously discussed.
“Consistently with the First and Fourteenth Amendments ‘civil courts do not inquire whether the relevant (hierarchical) church governing body has power under religions law (to decide such disputes) .... Such a determination ... frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the allocation of power within a (hierarchical) church so as to decide religious law (governing church polity) would violate the First Amendment in much the same manner as civil determination of . religious doctrine.’ Md. & Va. Churches v. Sharpsburg Church, 396 U.S. 367, 369 (1970) (Brennan, J., concurring).”
Milivojevich, 426 U.S. at 708-09 (emphasis added). “Milivojevich, read in its entirety, holds that civil court review of ecclesiastical decisions of church tribunals, particularly those pertaining to the hiring or firing of clergy, are in themselves an ‘extensive inquiry' into religious law and practice, and hence forbidden by the First Amendment.” Young v. Northern Illinois Conference of United Methodist Church, 21 F.3d 184, 187 (7th Cir.1994). Although Milivojevich involved a church with a hierarchical government structure, “the same considerations apply, regardless of whether the church has a congregational, rather than a hierarchical, form of government.” Lott v. Eastern Shore Christian Ctr., 908 So.2d 922, 930 n. 4 and 930 (Ala.2005) (“ ‘[T]his Court must not interfere with the fundamental ecclesiastical concern of determining who is and who is not [a Church] member.’” (quoting Burgess v. Rock Creek Baptist Church, 734 F.Supp. 30, 33 (D.D.C.1990))).

D. Giving Effect to a Purported Church Decision

The plaintiffs argue that Greenwood Missionary .Baptist Church has, through its congregation, already interpreted its bylaws and that the plaintiffs merely want to enforce that interpretation as conclusive. The principle that the judiciary must treat a decision by the church’s highest adjudicatory body as final and binding arose in the context of a party seeking to have a church’s decision overturned. See Milivojevich, 426 U.S. at 706-07 (involving a defrocked bishop who sued, in part, “to have himself declared the true Diocesan Bishop”); Hundley, supra (involving an expelled member seeking to compel his restoration to church membership); and Lott, 908 So.2d at 924 (involving a church member who sought a temporary restraining order to prevent his church from disciplining him). The instant case, however, presents the inverse situation: Supporters of a decision purporting to be that of the church seek to have the church’s decision *450 affirmed against parties adversely affected. The statement by this Court and the Supreme. Court of the United States that a church's decision is final and binding means only that the judiciary lacks power to reverse a. church’s decision; it does not mean that the judiciary possesses power to affirm that same decision.
A court’s involvement in a religious matter is not sanitized merely because the court purports to ratify, rather than annul, a church’s decision. What violates church autonomy is not the substance of the court’s ultimate determination, but the judiciary’s very participation in the intra-church conflict.
“The enforcement of the mandates of a church to resolve a civil proceeding is a concept far removed from the ideas held by the constitutional fathers, who were clearly opposed to any governmental practice tending to the. establishment of a religion..... Freedom of religion, not only is concerned with the intervention of the civil authorities in the affairs of the church, but also prevents the church from exercising its authority through the state.”
Note, Religious Societies-Applicability of Hierarchical Church Law to Property Disputes Resolved by Civil Courts, 30 N.Y.U.L.Rev. 1102, 1104 (1955) (emphasis added). In backing a church’s decision with the force of law, a civil court risks running afoul of both Establishment Clause and Free Exercise Clause principles.
“The prohibition on judicial cognizance of ecclesiastical disputes is founded upon both establishment and free exercise clause concerns. By adjudicating religious disputes, civil courts risk affecting ’associational conduct and thereby chilling the free exercise of religious beliefs.- Moreover, by 1 entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks ‘establishing’ a religion.”
Crowder v. Southern Baptist Convention, 828 F.2d 718, 721 (11th Cir.1987) (emphasis added). See also Little v. First Baptist Church, Crestwood, 475 U.S. 1148, 1150, 106 S.Ct. 1802, 90 L.Ed.2d 347 (1986) (Marshall, J., dissenting) (“This participation in the decisionmaking of an ecclesiastical body is both dangerous and unwarranted. Courts have no business ‘helping’ a religious organization to make its wishes known.”).
As its name implies, subject-matter, jurisdiction refers to the power of a court to entertain the subject matter of a given lawsuit. I agree with Justice Parker that the subject matter of this dispute involves, at its core, an ecclesiastical controversy. I also agree with the principle that “the courts will not assume jurisdiction, in fact ha[ve] none, to resolve disputes regarding [churches’] spiritual or ecclesiastical affairs.” Nixon, 340 So.2d at 748. A lack of subject-matter jurisdiction does not mean that a court has power to grant relief to one party but not to the other. Church-state separation does not permit a trial court to affirm a church’s decision when the church is the plaintiff, while requiring the court to dismiss the case for lack of subject-matter jurisdiction when a disaffected member or officer is the plaintiff. To grant relief to eithéi party in a purely ecclesiastical matter is to assume jurisdiction where 'none exists. “[I]f a trial court lacks subject-matter jurisdiction, it has no power to take any action other than to dismiss the complaint.” Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 26 (Ala.2007) (emphasis added). See also Hundley, 131 Ala. at 246, 32 So. at 579 (affirming the trial court’s dismissal of the underlying action). Dismissal is what the petitioners request today, and they have a clear legal right to it.

*451
E. Inadequacy of Other Remedies

The plaintiffs also state that they “have no other avenue to enforce the Church’s decision to remove the Petitioners.” The circuit court determined that .the prospect of irreparable harm justified its preliminary injunction in part because “alleged obligations of the Church are not being met,” “[t]he pastor is not being paid,” and “[t]he medical insurance for him and his family [has] lapsed.” While I sympathize with the plight of those impacted by this unfortunate situation, the judicial branch does not exist to resolve every, dispute. “[E]ach church is a, law unto itself in the management of its .own affairs.” Barton v. Fitzpatrick, 187 Ala. 273, 278, 65 So. 390, 392 (1914).
The Alabama Constitution vests our unified judicial system with “the judicial power.” § 139, Ala. Const.1901. This power is limited in scope and is constrained by “Gad-ordained jurisdictional boundaries.” Ex parte Christopher, 145 So.3d 60, 79 (Ala.2013) (Moore, C.J., concurring specially). I noted the following in my special writing in Christopher:
“The health of civil society depends on an appropriate respect for those institutions that mediate between the individual and the State and provide the relational richness that gives life substance. Chief among these.are the church and the family. Each has its own government and sphere of authority.”
145 So.3d at 79 (Moore, C.J., concurring specially). “[T]he nature of church and state as distinct spheres of government precludes state oversight of matters ... that belong to the jurisdiction of the church.” Bailey, 940 So.2d at 258 (Parker, J., concurring specially).
Ultimately, the lack of an adequate remedy in .the church setting is an insufficient condition for judicial interference. As one court candidly observed: “Even if wrongs exist in the ecclesiastical setting, and the administration of a church is inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle that it overshadows the inequities which may result from its liberal application.” Hawkins v. Friendship Missionary Baptist Church, 69 S.W.3d 756, 758 n. 3 (Tex.App.2002).

III. Conclusion

In determining whether civil courts have cognizance to resolve a church dispute, “[i]t is not enough that a schism or division has developed among the members on account of differences of opinion in the interpretation and application of the. declared doctrines and practices of the society; such matters must be settled by the society for itself in its own way.” Williams v. Jones, 258 Ala. 59, 62, 61 So.2d 101, 104 (1952). I believe that the instant action invites judicial interference with the sovereign authority of Greenwood Missionary Baptist Church to settle its internal conflict in its own way. I would decline that invitation and instruct the circuit court to do the same. Accordingly, I would grant the petition in part and instruct the circuit court to dismiss the case for want of subject-matter jurisdiction. Í therefore respectfully dissent.

. “The common law of England, so far as it is not inconsistent with the Constitution, laws, and institutions of this state, shall, together ’ with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature." § 1-3-1, Ala. Code 1975.

. In his dissent, Justice Murdock references one such issue: Whether indispensable parties are missing from the underlying action.

. In a case precisely on point, the Court of Appeals of North Carolina considered whether a trial court had subject-matter jurisdiction to determine whether a meeting held by a Missionary Baptist Church complied with the procedure set forth in the church bylaws. Emory v. Jackson Chapel First Missionary Baptist Church, 165 N.C.App. 489, 491, 598 S.E.2d 667, 669 (2004). In light of ambiguities in the bylaws, the parties’ conflicting interpretations of the bylaws, and the existence of church customs that could potentially alter the plain meaning of the bylaws, the Court of Appeals reasoned that the trial court was unable to resolve the dispute "without delving into matters of ecclesiastical governance.” 165 N.C.App. at 492, 598 S.E.2d at 670. As a result, the court held that the trial court lacked subject-matter jurisdiction to entertain the action. 165 N.C.App. at 493, 598 S.E.2d at 671. Because the instant action, like the action in Emory, would require the circuit court to resolve similar interpretive difficulties, the circuit court here is without jurisdiction to construe the bylaws.

. In Jones, the Court held that the First Amendment permits a state to resolve a property dispute arising from a church schism by examining relevant documents, such as a deed, church charter, or church constitution, "in purely secular terms.” ’ 443 U.S. at 604. This approach, .known as the " ‘neutral principles of law’ approach,” 443 U.S. at 602, contemplates secular interpretation of religious documents; The present action presents a dispute over church leadership, not’ ownership of property, so the neutral-principles approach from Jones is inapposite here.

. I agree with Justice Parker that “it is unclear whether the April 20, 2014, vote constituted a decision by-the highest adjudicatory body of the church." 185 So.3d at 442. Greenwood Missionary Baptist Church is not a party to this action and is thus not present to allege that the proper church authority rendered the decision to terminate the petitioners. The circuit court must therefore consider evidence, such as procedures set forth in the- bylaws and the number of church members compared to the number of removal votes cast, to determine whether the decision represented an official act by the church. Not only does such evidence go to the validity of the purported church decision — the very inquiry courts are without jurisdiction to entertain — but the Court denies the petitioners' *449 mandamus petition despite the lack of sufficient factual predicates for jurisdiction. See Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So.2d 344, 349 (Ala.2008) (quoting Erby v. United States, 424 F.Supp.2d 180, 182 (D.D.C.2006)).
I respectfully disagree with justice Parker that the petitioners .have the burden of "de-monstrat[ing] that the April 20, 2014, meeting was not a decision by the highest adjudicatory body of the church.” 185 So.3d at 443. "'In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove .that jurisdiction exists.' ” Safeway, 990 So.2d at 352 (quoting OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir.2002)) (emphasis added). When a defendant petitions this Court for a- writ of mandamus and seeks dismissal of-an action for lack of subject-matter jurisdiction, the defendant establishes a clear legal right to dismissal if the plaintiff has failed to prove subject-matter jurisdiction below, Safeway, 990 So.2d at 352.