WP Church, LLC v. Whalen, 2026 NCBC 11.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV028702-590

WP CHURCH, LLC, directly on
behalf of itself and derivatively on
behalf of 5CHURCH CHARLESTON,
LLC,

Plaintiff,

v.

PATRICK WHALEN,

Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

**THIS MATTER** is before the Court on Defendant Patrick Whalen's Motion to Dismiss Verified Complaint ("Motion to Dismiss," ECF No. 7).  Having considered the Motion to Dismiss, the parties' briefs, the arguments of counsel, the applicable law, and all other appropriate matters of record, the Court concludes that the Motion to Dismiss should be **DENIED** for the reasons set forth below.

*Nelson Mullins Riley & Scarborough, LLP, by Robert Lindholm, for Plaintiff.*

*Parton Law, PLLC, by Brian North, for Defendant.*

Davis, Judge.

## INTRODUCTION

1.     In addressing this Motion, the Court must consider the limitations existing under South Carolina law on the broad authority conferred upon the manager of a limited liability company in the company's operating agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

2. WP Church, LLC ("WP Church") is a North Carolina limited liability company whose principal place of business is in Mecklenburg County, North Carolina. (Compl. ¶ 6, ECF No. 3.)

3. 5Church Charleston, LLC ("5Church") is a South Carolina limited liability company formed in 2014 by Defendant Patrick Whalen, WP Church, and several other investors for the purpose of operating a restaurant in downtown Charleston, South Carolina called Church and Union Charleston ("C&U Charleston").

4. Whalen is a citizen of North Carolina and is the sole manager of 5Church. (Compl. ¶ 7.) Whalen also has interests in other restaurant ventures, including Church and Union Charlotte, Church and Union Nashville, Ophelia's, Tempest (Pink Moon), Church and Union Denver, and Church and Union Miami (the "Affiliate Restaurants," Compl. ¶ 21).

5. WP Church has no ownership interest in any of the Affiliate Restaurants. (Compl. ¶ 22.)

6. According to the First Amendment to 5Church's Operating Agreement, the ownership interests for 5Church are as follows: Whalen–40%, WP Church–35%, Alejandro Torio–15%, Dr. Maurice Whalen–10%, and Jamie Lynch–8%. (Compl. Ex. B, at Ex. A-1.)[1]

---

[1] This listing of the ownership percentages is obviously incorrect, however, as they total *108%*.

7. At its 2014 founding, the original members of 5Church (including Whalen and WP Church) executed an Operating Agreement (the "Operating Agreement," Compl. Exs. A, B.) The Operating Agreement for 5Church grants broad—but not unfettered—authority to Whalen, as the company's manager, to make business decisions on behalf of 5Church. (Operating Agreement § 4.1.)

8. In this action, WP Church alleges that Whalen improperly used his status as the manager of 5Church to transfer in excess of $4.2 million of 5Church's funds to the Affiliate Restaurants and for his own personal use in connection with expenses related to hotels, vehicles, and legal services. WP Church further asserts that 5Church has received no benefit from these transfers. (Compl. ¶¶ 24–32.)

9. Pursuant to South Carolina Code § 33-44-1101, WP Church sent a pre-suit demand letter to Whalen in his capacity as the manager of 5Church on 23 May 2025. The 23 May letter set forth WP Church's allegations of breach of fiduciary duty, conversion, and self-dealing by Whalen. The letter demanded that 5Church initiate a lawsuit to redress the alleged breaches of the Operating Agreement. (Compl. Ex. C.)

10. On 4 June 2024, Whalen, in an email to 5Church's members, characterized WP Church's demand as

> a ludicrous position. There is no reason to incur that kind of expense. There's no reason to, I mean, to me, it's just sort of a flailing, grasping attempt to threaten us with litigation, which I find kind of hilarious[.]

(Compl. ¶ 37.)

11. Whalen's counsel confirmed to WP Church on 6 June 2025 that Whalen would not institute a lawsuit as demanded in the 23 May letter. (Compl. ¶ 38.)

12. WP Church initiated this action by filing a Complaint on 10 June 2025. In its Complaint, WP Church asserted the following claims for relief: (1) a derivative claim on behalf of 5Church for breach of fiduciary duty; (2) a derivative claim on behalf of 5Church for conversion; (3) a derivative claim on behalf of 5Church for breach of contract; (4) a derivative claim on behalf of 5Church for unjust enrichment; (5) a claim brought both directly on behalf of WP Church and derivatively on behalf of 5Church for "[o]ppression of [m]inority interest-holder [w]arranting [f]orced [p]urchased [sic] of WP Church's [m]embership [u]nits"; and (6) a derivative claim on behalf of 5Church for "[w]rongful [c]onduct [w]arranting [d]isassociation of Whalen under S.C. Code Ann. § 33-44-601[.]"

13. This action was designated as a complex business case and assigned to the undersigned on 11 June 2025. (ECF Nos. 1–2.)

14. On 17 June 2025, Whalen filed the present Motion to Dismiss, asserting that the Complaint should be dismissed pursuant to Rules 12 (b)(1), (2), (4), and (6) of the North Carolina Rules of Civil Procedure.[2] Essentially, Whalen argues that (1) WP Church did not comply with mandatory pre-suit requirements before initiating its derivative claims; and (2) WP Church has failed to state a valid claim for relief

---

[2] Although Whalen purports to base his Motion to Dismiss on all four of these sub-parts of Rule 12, a careful reading of his briefs reveals that he is actually seeking dismissal of WP Church's derivative claims based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and dismissal of WP Church's Complaint in its entirety under Rule 12(b)(6).

against Whalen because his actions were all within the authority granted to him as manager of 5Church under the Operating Agreement.

15. The matter is now ripe for resolution.[3]

**LEGAL STANDARD**

16. A motion brought under Rule 12(b)(1) challenges a court's jurisdiction over the subject matter of the claimant's claims. N.C. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest," *In re T.R.P.*, 360 N.C. 588, 590 (2006), and has been defined as "a court's legal authority to adjudicate the kind of claim alleged," *In re McClatchy Co., LLC*, 386 N.C. 77, 85 (2024) (cleaned up). "[T]he proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465 (1964) (cleaned up).

17. In determining the existence of subject matter jurisdiction, the Court may consider matters outside the pleadings. *Emory v. Jackson Chapel First Missionary Baptist Church*, 165 N.C. App. 489, 491 (2004). However, "if the trial court confines its evaluation to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff." *Munger v. State*, 202 N.C. App. 404, 410 (2010) (quoting *Dep't of Transp. v. Blue*, 147 N.C. App. 596, 603 (2001)).

18. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the complaint in the light most favorable to the plaintiff.

---

[3] Pursuant to BCR 7.4, the Court elects to decide this Motion without a hearing.

*See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987). The Court accepts all well-pled factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is not, however, required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't Health and Hum. Servs., Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).

19. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (cleaned up). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (cleaned up).

20. Our Supreme Court has observed that "dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats

the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up).

## ANALYSIS

### I.      Dismissal under Rule 12(b)(1)

21.      As an initial matter, the Court has raised *sua sponte* the question of whether WP Church's derivative claims are subject to dismissal based on its failure to name 5Church as a nominal defendant in its Complaint.

22.      Under North Carolina law, a plaintiff asserting derivative claims must name the company on whose behalf the claim is being asserted as a nominal defendant. "A corporation is, beyond question, a necessary party to any litigation brought derivatively in its name and is customarily captioned a nominal defendant." *Swenson v. Thibaut*, 39 N.C. App. 77, 98–99 (1978); *see Wright v. Lorusso*, 2022 NCBC LEXIS 18, *3 (N.C. Super. Ct. April 22, 2022) (noting that an LLC is a necessary party to any litigation brought derivatively in its name); *see also Lafayette Vill. Pub, LLC v. Burham*, 2025 NCBC LEXIS 8, *6, n. 1 (N.C. Super. Ct. March 4, 2025) (same).

23.      In an Order entered 29 October 2025, this Court directed the parties to submit supplemental briefs on this issue, and the parties have done so.

24.      As noted above, 5Church is a South Carolina LLC.[4]

25.      N.C.G.S. § 57D-8-06 states as follows: "In any derivative proceeding in the right of a foreign LLC, the matters covered by this Article will be governed by the

---

[4] Moreover, its Operating Agreement contains a choice-of-law provision stating that "[t]his Agreement must be governed by and construed in accordance with the laws of South Carolina, without regard to choice of law principles of any jurisdiction." (Operating Agreement § 11.3.)

law of the jurisdiction of the foreign LLC's organization except for the matters governed by G.S. 57D-8-02, 57D-8-04, and 57D-8-05." N.C.G.S. § 57D-8-06. *See Azure Dolphin, LLC v. Barton*, 371 N.C. 579, 596 (2018) (finding Oregon law to be controlling as the limited liability company in question was formed and operated in Oregon); *Vincelette v. Kelly Court*, 2025 NCBC LEXIS 94, at *21 (N.C. Super. Ct. July 30, 2025) (finding that Connecticut law governed the standing question in a derivative action because the limited liability company named as the nominal defendant was incorporated in Connecticut).

26. Therefore, the Court must look to South Carolina law to determine whether that state's laws require a limited liability company to be named as a party in a derivative action.

27. In *Hotz v. Minyard*, 304 S.C. 225 (1991), the South Carolina Supreme Court expressly ruled that the company at issue in a derivative action is *not* required to be named as a party in a derivative suit. *Id.* at 231.

28. As a result, based on the application of N.C.G.S. § 57D-8-06, the absence of 5Church as a nominal defendant in this case does not deprive the Court of subject matter jurisdiction.

29. Whalen nevertheless contends that subject matter jurisdiction is lacking as to WP Church's derivative claims based on his contention that the pre-suit demand letter sent by WP Church (Compl. Ex. C) was substantively and procedurally defective.

30.     Under South Carolina law, before initiating a derivative action, a member must make a written demand on the company in a way that (1) identifies the alleged wrongdoers; (2) describes the factual basis of the wrongful acts and the harm caused to the company; and (3) requests remedial relief. *Adkins v. I'On Co. LLC,* 439 S.C. 568, 588–89 (2023).

31.     Whalen argues that WP Church's pre-suit demand was substantively defective because it merely contained generalized allegations of wrongdoing and lacked the degree of specificity required under South Carolina law. Additionally, Whalen maintains that the pre-suit demand was deficient because the letter's only identified demand for remedial action by 5Church was the filing of a derivative action against Whalen—a remedy that Whalen asserts should instead have been a remedy of last resort.

32.     The Court has carefully reviewed the 23 May 2025 letter sent by WP Church's attorney to Whalen and concludes that it sufficiently set out WP Church's allegations that Whalen had engaged in self-dealing and improperly used 5Church's funds—allegations that form the basis for the present lawsuit.

33.     Moreover, in addition to identifying the wrongdoer and the wrongful acts, the 23 May letter also demanded that Whalen initiate a lawsuit on behalf of 5Church to redress these wrongs. The Court finds unpersuasive Whalen's argument that a different remedy was required to be requested in the letter. Accordingly, Whalen has not shown how the letter was insufficient under South Carolina law.

34. In the alternative, even if the 23 May letter were somehow deemed to be deficient, South Carolina law recognizes futility as a basis for excusing compliance with the pre-suit demand requirement for derivative actions. *See, e.g., Grant v. Gosnell*, 266 S.C. 372, 375–76 (1976) ("[P]etitioning the Bank for redress prior to instituting this suit would have been an exercise in futility and, therefore, such demand was unnecessary."). Here, the sole individual alleged to have committed wrongful acts was Whalen himself, the manager of the company. As such, a demand that he—on behalf of 5Church—sue himself would have presumably been a futile act.

35. Next, Whalen argues that the pre-suit demand letter was procedurally deficient because it was not served on 5Church's registered agent. However, Whalen does not dispute the fact that the letter was sent to both Whalen's business address and his email address as well as the fact that a copy was sent to his attorney. (Compl. Ex. C.) Moreover, there is no dispute over the fact that Whalen received actual notice of the pre-suit demand.

36. Whalen has failed to cite any South Carolina legal authority for the proposition that the demand letter was *required* to instead be served on 5Church's registered agent. Therefore, the Court finds this argument to be without merit.

37. Accordingly, Whalen's Motion to Dismiss based on Rule 12(b)(1) is **DENIED**.

## II. Dismissal Under Rule 12(b)(6)

### A. Managerial Authority

38. Whalen's brief in support of his Motion to Dismiss does not address WP Church's Complaint on a claim-by-claim basis. Instead, he advances a series of broader arguments in support of dismissal, mostly based on his contention that each action alleged in the Complaint that he took was within his authority under the Operating Agreement as the sole manager of 5Church.

39. Specifically, Whalen contends that his decision to transfer funds of 5Church to the Affiliate Restaurants was within the broad managerial authority granted him under Section 4.1 of the Operating Agreement, which states in relevant part:

> (a) Except as otherwise expressly provided in this Agreement (including without limitation Section 4.3) or the [South Carolina Uniform Limited Liability Company] Act, the Manager shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company and to take all such actions as they deem necessary or appropriate to accomplish the purposes and direct the affairs of the Company. The rights and authority granted to the Manager in the preceding sentence shall include, but are not limited to, the power:
>
> (i)    to direct the business and operations of the Company;
> . . .
> (iii)    to enter into any kind of activity and to enter into, perform and carry out contracts of any kind necessary to, in connection with, or incidental to the accomplishment of the purposes of the Company.
> . . .
> (ix)    to cause the Company to borrow money from any Person, including any Member or the Manager or any Affiliates thereof (subject, in the case of any such borrowing between the Company and the Manager or its Affiliates, to the provisions of Section 4.1(c) hereof);

(x)     to cause the Company to guarantee loans or other extensions of credit in furtherance of the Company Business;

. . .

(xii)   to take any and all other actions which are determined by the Manager to be necessary, convenient or incidental to the conducting of the Company Business or for the quiet enjoyment or maintenance of the Company and its assets.

. . .

(b) Except as otherwise expressly provided in this Agreement or required by any non-waivable provision of the Act or other applicable law, no Member or Holder shall (a) have any right to vote on or consent to any matter, act, decision, or document involving the Company or its business, or (b) take part in the day-to-day management, or operation or control, of the business and affairs of the Company.

(Operating Agreement §§ 4.1(a), 4.1(b).)

40.     Additionally, Whalen takes the position that Section 4.9 of the Operating Agreement limits his liability for the decisions he makes as the manager of 5Church.  That provision reads as follows:

**Limitation on Liability of Manager.**

(a)     To the fullest extent permitted under the Act or any other applicable law as currently or hereafter in effect, neither the Manager nor any officer, or any Affiliate of a Manager, shall be personally liable, responsible or accountable in damages or otherwise to the Company or any of its Members or Holders for or with respect to any action taken or failure to act on behalf of the Company within the scope of the authority conferred on the Manager by this Agreement or by law. In addition to, and not by way of limitation of, the preceding sentence, no Manager or officer shall be liable to the Company or its Members or Holders for monetary damages for breach of fiduciary duty as the Manager or an officer, except for liability for acts or omissions not in good faith or which involve fraud, gross negligence, willful misconduct or a knowing violation of law. Any repeal or modification of this Section 4.9 shall not adversely affect any right or protection of the Manager or an officer existing prior to such repeal or modification.

(b)     The Manager and each officer shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to the matters such Manager or officer reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or net cash flow or any other facts pertinent to the existence and amount of assets from which distributions to the Holders might properly be paid.

(Operating Agreement § 4.9.)

41.     The Court is unpersuaded by these arguments.  First, Whalen has not identified any specific provision of the Operating Agreement purporting to authorize him to enter into a transaction in which he has a conflict of interest. Given his ownership interest in each of the Affiliate Restaurants, he had a financial interest in those entities' receipt of 5Church's funds, which conflicted with his duty of loyalty to 5Church.

42.     Second, even if any of the above-quoted provisions of the Operating Agreement could be construed to allow his use of 5Church funds to benefit the Affiliate Restaurants, any such provisions could not be given effect under South Carolina law.

43.     Section 33-44-409 of the South Carolina Uniform Limited Liability Company Act (the "Act") sets forth general standards of conduct for members and managers of limited liability companies and states in pertinent part as follows:

(b) A member's duty of loyalty to a member-managed company and its other members is limited to the following:

(1) to account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity;

(2) to refrain from dealing with the company in the conduct or winding up of the company's business as or on behalf of a party having an interest adverse to the company; and

(3) to refrain from competing with the company in the conduct of the company's business before the dissolution of the company.

(c) A member's duty of care to a member-managed company and its other members in the conduct of and winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

(d) A member shall discharge the duties to a member-managed company and its other members under this chapter or under the operating agreement and exercise any rights consistently with the obligation of good faith and fair dealing.

(e) A member of a member-managed company does not violate a duty or obligation under this chapter or under the operating agreement merely because the member's conduct furthers the member's own interest.

(f) A member of a member-managed company may lend money to and transact other business with the company. As to each loan or transaction, the rights and obligations of the member are the same as those of a person who is not a member, subject to other applicable law.

(g) This section applies to a person winding up the limited liability company's business as the personal or legal representative of the last surviving member as if the person were a member.

(h) In a manager-managed company:

(1) a member who is not also a manager owes no duties to the company or to the other members solely by reason of being a member;

(2) a manager is held to the same standards of conduct prescribed for members in subsections (b) through (f);

(3) a member who pursuant to the operating agreement exercises some or all of the rights of a manager in the management and conduct of the company's business is held to the standards of conduct in subsections (b) through (f) to the extent that the member exercises the managerial authority vested in a manager by this chapter; and

(4) a manager is relieved of liability imposed by law for violation of the standards prescribed by subsections (b) through (f) to the extent of the managerial authority delegated to the members by the operating agreement.

S.C. Code Ann. § 33-44-409.

44.     Pursuant to this statute, courts applying South Carolina law have held that the manager of a limited liability company owes a duty of loyalty to the company itself.

> Pursuant to S.C. Code Ann. §§ 33-44-409(b) and (h)(2), a manager of a manager-managed company or member of a member-managed company owes the company and the other members a duty of loyalty. The duty of loyalty requires that the manager: account to the company and to hold as trustee for it any property, profit or benefit derived by the members in the conduct…of the company's business[.]

*In re JK Harris & Co., LLC,* 512 B.R. 562, 566 (Bankr. D.S.C. 2012).

45.     Under the Act, this duty of loyalty cannot be waived in an operating agreement, but the operating agreement can "identify specific types of categories of activities that do not violate the duty of loyalty, *if not manifestly unreasonable.*" S.C. Code Ann. § 33-44-103(b)(2)(i) (emphasis added).

46.     Thus, even if the Operating Agreement could somehow be construed as giving Whalen the authority to use 5Church's funds to help his other business ventures, it would be "manifestly unreasonable" to give those provisions effect. *See id.*

47. Whalen's argument appears to be that at all times he possessed the power to take as much of 5Church's funds as he desired and use them for purposes that benefited his other business interests, which is the epitome of a conflicted transaction. *See*, *e.g.*, *Synectic Ventures I, LLC v. EVI Corp.*, 353 Ore. 62, 78 (2012) (noting that a manager of an LLC has "vast opportunities to personally benefit at the LLC's expense" and accordingly, a manager is held to a duty to "refrain from dealing with a limited liability company in a manner adverse to the limited liability company and to refrain from representing a person with an adverse interest to the limited liability company").

48. In addition, Whalen's argument fails to account for the allegations in the Complaint that he also used 5Church funds to lease vehicles and apartments, pay legal fees, and settle lawsuits. Although Whalen is apparently contending that these expenses were legitimately incurred in his management of the Affiliate Restaurants, taking WP Church's allegations as true under Rule 12(b)(6), these sums were used solely for his own personal benefit and at the expense of 5Church's best interests.

49. For all of these reasons, for purposes of the present Motion to Dismiss, the Court finds that the Operating Agreement does not serve to preclude the claims asserted by WP Church in this case.

### B. Business Judgment Rule

50. Next, Whalen maintains that his decisions are immune from attack by WP Church under the business judgment rule. But this argument is also unavailing.

51.     The South Carolina Supreme Court has explained this rule in the corporate context as follows:

> In South Carolina, courts apply the business judgment rule to protect corporate directors. Under the business judgment rule, a court will not review the business judgment of a corporate governing board when it acts within its authority, and it acts without corrupt motives and in good faith.

*Fisher v. Shipyard ViII. Council of Co-Owners, Inc.,* 415 S.C. 256, 270 (2016).

52.     Taking WP Church's allegations as true for purposes of Rule 12(b)(6), the Court finds that the business judgment rule does not apply here. Given his financial interests in the Affiliate Restaurants, the business judgment rule cannot justify the transfers of 5Church's funds to those entities because Whalen effectively stood on both sides of the transaction—as both lender and borrower. *In re SandRidge Energy, Inc. S'holder Derivative Litig.,* 302 F.R.D. 628, 649 (W.D. Okla. 2014) ("The business judgment rule will be rebutted…where a plaintiff has shown that the Directors were not sufficiently disinterested."); *Fox v. Koplik (In re Perry H. Koplik & Sons, Inc.),* 476 B.R. 746, 803 (Bankr. S.D.N.Y. 2012) ("Where officers or directors of a corporation considering a transaction are not disinterested and have a personal stake in the outcome, their determination is not entitled to the deference usually given under the business judgment rule.").

### C.     Economic Loss Rule

53.     Finally, Whalen argues that the economic loss rule bars all of WP Church's claims that are "outside the terms of the Operating Agreement." (Def.'s Br. Supp. Mot. Dismiss, at 27, ECF No. 8.)

54.     As an initial matter, the Court notes that Whalen's brief does not specifically identify which of WP Church's claims should be dismissed on this ground, which was his burden to articulate.

55.     Moreover, even assuming his economic loss rule argument was meant to apply to the tort claims asserted by WP Church in its Complaint, this contention fails under South Carolina law.[5]

56.     In *Carroll v. Isle of Palms Pest Control, Inc.*, 446 S.C. 177 (2025), the South Carolina Supreme Court sharply limited the application of the economic loss rule.

> Today, we clarify a few things about the economic loss rule. First, we hold that the rule applies *only in the product liability context and when the only injury is to the product itself.* In such instances, the loss is economic or commercial, and the remedy is limited to the laws of contract or warranty.
>
> . . .
>
> Applying our holding to the facts before us, we . . . rule that the economic loss rule does not apply because the contract did not involve the sale of a product.

*Id.* at 186, 190 (emphasis added).

57.     Here too, the present action lies outside the products liability context. Therefore, the economic loss rule is inapplicable under South Carolina law.

58.     Consequently, the Court concludes that Whalen's Motion to Dismiss under Rule 12(b)(6) must also be **DENIED**.

---

[5] Both parties address the applicability of the economic loss rule under South Carolina law, and the Court will do the same at this early stage of the litigation.

## CONCLUSION

Therefore, for the reasons set out above, Whalen's Motion to Dismiss is **DENIED**.

**SO ORDERED**, this the 11th day of February 2026.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge
for Complex Business Cases