IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1313

Filed: 7 February 2017

Cumberland County, No. 13 CVS 8726

GEORGE BURNS, MACK McCANN and CHARLES BARTLETT, Trustees of Park's Chapel Free Will Baptist Church, Plaintiff(s),

v.

KINGDOM IMPACT GLOBAL MINISTRIES, INC., Defendant.

Appeal by Defendant from orders entered 18 December 2014 by Judge Richard T. Brown and 19 June 2015 by Judge Tanya T. Wallace[1] in Cumberland County Superior Court. Heard in the Court of Appeals 24 May 2016.

> *Yarborough, Winters & Neville, P.A., by J. Thomas Neville, for Plaintiffs-Appellees.*
>
> *James H. Locus, Jr., for Defendant-Appellant.*

INMAN, Judge.

Kingdom Impact Global Ministries, Inc. ("Defendant" or "Kingdom Impact") appeals from the 19 June 2015 order granting a motion for summary judgment in favor of George Burns, Mack McCann, and Charles Bartlett, in their capacity as trustees of Parks Chapel Free Will Baptist Church (collectively "Plaintiffs"), as the rightful title holder to several tracts of land located at 868 Amye Street in

---

[1] The order below incorrectly spells Judge Wallace's name as Judge Tonya T. Wallace.

Fayetteville, North Carolina. Defendant also appeals the trial court's 18 December 2014 order imposing sanctions for Defendant's failure to respond to Plaintiffs' discovery requests. Defendant argues that Plaintiffs lacked standing, and that the trial court erred in imposing discovery sanctions and granting Plaintiffs' motion for summary judgment because there existed genuine issues of material facts. After careful review, we affirm the trial court's discovery sanctions and summary judgment orders.

**Factual History**

This appeal arises out of the disputed ownership of real property located at 868 Amye Street, in Fayetteville, North Carolina ("the Property"). The Property, conveyed seventy years ago to the trustees of Free Will Baptist Church, is comprised of several tracts of land and includes a church sanctuary. Over the years, parishioners deeded various tracts of land to the "Trustees of the Freewill Baptist Church and their successors" and later to the "Trustees of Parks Chapel Free Will Baptist Church and their successors." The church was affiliated with the United American Free Will Baptist Denomination (the "Denomination").

The tracts central to this dispute, where the sanctuary is sited, have been historically identified as Lots 12, 13, and 14 according to the plat of "Mac's Park." In 1947, Emily McMillan conveyed Lots 13 and 14 by deed to the trustees of Freewill Baptist Church to be used for church purposes. In 1967, Mabel McNeill conveyed Lot

12 by deed to the trustees of Free Will Baptist Church to be used by the Denomination.

Contained within the 1947 deed conveying Lots 13 and 14 to Free Will Baptist Church is the following restrictive language:

> TO HAVE AND TO HOLD, the aforesaid lots of land and all privileges and appurtenances thereto belonging, to the said parties of the second part, and their successors in office, to their only use and behood for so long as said property is used only for church purposes, and no longer, upon the trust, nevertheless, that said property be held by the parties of the second part, and their successors in office, for the sole use, benefit, and enjoyment of said FREEWILL BAPTIST CHURCH, its successors and assigns.

The 1967 deed conveying Lot 12 to Free Will Baptist Church includes the following restrictive language:

> In trust that said premises shall be used, maintained and disposed of as a place of Divine worship for the use of the United American Free Will Baptist Church in America, subject to the discipline, usage, and ministerial elections of said church, as may be authorized and declared from time to time by the General Conference of said church and the Annual Conference in whose bounds the premises are situated.

In 1984, the trustees of Free Will Baptist Church conveyed Lots 13 and 14 to the trustees of Parks Chapel Free Will Baptist Church ("Parks Chapel") as successor to Free Will Baptist Church. It is undisputed that the church simply changed its name at that time. It is also undisputed that the trustees of Free Will Baptist Church, for reasons that do not appear in the record, did not convey title in Lot 12 to the

- 3 -

trustees of Parks Chapel when they conveyed Lots 13 and 14 when the church changed its name.

In 1999, Parks Chapel became incorporated under North Carolina law as a registered charitable or religious nonprofit corporation. The corporate bylaws required that the church be governed by the Book of Discipline of the Denomination, stating "this local church shall maintain its' [sic] affiliation with the United American Freewill Baptist Denomination and agrees to recognize and be governed by the United American Freewill Baptist Discipline . . . ."

On 3 April 2009, at the conclusion of a worship service, then acting pastor of Parks Chapel, William Thomas Ford ("Pastor Ford"), held a conference meeting to propose withdrawing Parks Chapel from the Denomination and the regional conference to which it was assigned, Cape Fear Conference B (the "Conference"). The parties submitted conflicting evidence before the trial court regarding whether notice of the meeting was provided, who was permitted the opportunity to vote on the withdrawal, and the outcome of a vote held during the meeting.

A month later, on 8 May 2009, Pastor Ford sent a letter to the Denomination and the Conference notifying them that Parks Chapel was withdrawing its membership and would cease paying dues.

In February 2010, Pastor Ford signed Articles of Incorporation for Kingdom Impact, which were filed with the North Carolina Secretary of State's Office,

declaring Kingdom Impact a non-profit religious organization. In May 2010, Frances Jackson, identified as a trustee of Parks Chapel, signed Articles of Merger of Parks Chapel Freewill Baptist Church, Inc. into Kingdom Impact Global Ministries, Inc. with the Secretary of State's Office. The affidavit testimony before the trial court however, challenged whether the merger was properly voted on by the members of Parks Chapel.

In June 2010, one month after the Articles of Merger were filed, the Denomination appointed Nathaniel Jackson as the Interim Pastor of Parks Chapel. The members of Parks Chapel who had opposed the withdrawal from the Denomination continued their affiliation with the Denomination and met for worship at the sanctuary on the Property until Defendant denied them access to the Property.

On 12 September 2011, Frances Jackson signed a deed transferring title of the Property from the trustees of Parks Chapel to the trustees of Kingdom Impact. This deed expressly transferred Lots 13 and 14 of Mac's Park, but does not mention Lot 12. Unlike the 1984 deed conveying the Property from the trustees of Free Will to the trustees of Parks Chapel, which was signed by all church trustees, no one other than Ms. Jackson signed the 2011 deed. Plaintiffs dispute that Ms. Jackson was a trustee of Parks Chapel at that time. Plaintiffs contend that Kingdom Impact,

claiming ownership and control of the Property based on the deed, dispossessed Plaintiffs of the Property and prevented them from continuing to worship there.[2]

**Procedural History**

Plaintiffs filed a civil action on 12 November 2013 alleging that Kingdom Impact was not authorized to transfer title to the Property and sought to quiet the title for their claims to the Property as the trustees of Parks Chapel. Plaintiffs also filed notice of *lis pendens* with the Clerk of Court in Cumberland County. Defendant filed an answer and counterclaim to quiet title in the Property.

*Discovery Disputes*

In 2014, several months after commencing this action, Plaintiffs served Defendant with interrogatories and a request for production of documents. Defendant failed to respond within the time allowed and did not seek an extension of time to respond. Plaintiffs sought responses without success before filing a motion to compel discovery. The trial court entered a consent order on 14 October 2014 ("Consent Order") requiring Defendant "to produce full and accurate responses[,]" and "produce all documents responsive" to Plaintiffs' discovery request within forty-five days.

---

[2] The record indicates that by 2009, when Pastor Ford proposed and took a vote to withdraw from the Denomination, Parks Chapel's parishioners were gathering for worship at 2503 Murchison Road, Fayetteville, North Carolina, a location different from the Property. The real property at the Murchison Road address is not at issue in this appeal.

Defendant served Plaintiffs with discovery responses on 20 November 2014. Instead of providing factual responses to each interrogatory, Defendant objected to many of the interrogatories as "over broad and vague." Plaintiffs argued the response was inadequate and filed a motion to show cause and sanctions. The trial court entered an order on 18 December 2014 ("Sanctions Order") finding that "Defendant has failed to fully respond to the Plaintiffs' discovery requests and Orders of this [c]ourt" and required that Defendant provide substantive responses no later than 19 January 2015. The Sanctions Order also prohibited Defendant from offering in evidence, at trial or in any motion, any documents responsive to the discovery requests which were not tendered to Plaintiffs by 19 January 2015.

On 20 January 2015, Defendant served Plaintiffs with a request for admissions. Plaintiffs moved for a protective order from the request on the basis that as a result of the Sanctions Order, Defendants would be prohibited from introducing in evidence any admissions obtained after 19 January 2015. The trial court granted the motion in a protective order entered 27 February 2015 ("Protective Order").

*Motions for Summary Judgment*

The parties then filed cross motions for summary judgment. The motions were heard over multiple sessions of court in which counsel disputed the legal merits as

well as the admissibility of various affidavits.[3] The trial court took the matter under advisement. On 19 June 2015, the trial court entered an order granting Plaintiffs' motion for summary judgment and denying Defendant's motion for summary judgment. Defendant timely appealed.

## Analysis

### I. Discovery Sanctions

Defendant argues the trial court erred in the Sanctions Order and in the Protective Order by expanding the scope of the sanctions beyond the language of the Sanctions Order. Specifically, Defendant asserts that the facts do not support the trial court's finding that Defendant substantially violated any of the discovery rules and that the Sanctions Order did not preclude Defendant from pursuing discovery after 19 January 2015. We conclude that the trial court did not abuse its discretion in entering either the Sanctions Order or the Protective Order.

*A. Sanctions Order*

The imposition of sanctions under Rule 37 for failure to comply with discovery requests and orders is a matter within the sound discretion of the trial court and cannot be overturned on appeal absent a showing of abuse of discretion. *Bumgarner*

---

[3] Defendant filed with its motion an affidavit by Francis Jackson dated 17 April 2015. Plaintiffs filed a motion to strike the affidavit on the grounds that it violated the 18 December 2014 discovery sanctions order. The trial court overruled the motion to strike and permitted the affidavit. When counsel appeared for the second session of the hearing, counsel disputed the admissibility of additional affidavits, including two that were filed but not served before the second hearing. The trial court overruled all objections and allowed the affidavits.

*v. Reneau*, 332 N.C. 624, 631, 422 S.E.2d 686, 690 (1992) (citation omitted). "An abuse of discretion may arise if there is no record evidence which indicates that [a] defendant acted improperly, or if the law will not support the conclusion that a discovery violation has occurred." *In re Pedestrian Walkway Failure*, 173 N.C. App. 254, 264, 618 S.E.2d 796, 803 (2005) (citations omitted). The specific choice of sanctions imposed by the trial court is likewise within its sound discretion. *Brooks v. Giesey*, 106 N.C. App. 586, 592, 418 S.E.2d 236, 239 (1992) (citation omitted). As an appropriate sanction for a failure to comply with a discovery order, Rule 37(b) explicitly grants the trial court authority to "refus[e] to allow the disobedient party to support or oppose designated claims or defenses, or prohibit[] the party from introducing designated matters in evidence" and to "require the party failing to obey the order to pay the reasonable expenses, including attorney's fees[.]" N.C. Gen. Stat. § 1A-1, Rule 37(b) (2015).

Here, the record is replete with information supporting the Sanctions Order. Defendant failed to respond to Plaintiffs' initial discovery requests for three months, leading to a consent order being entered in favor of Plaintiffs. While Defendant did serve Plaintiffs with discovery responses within the designated timeframe of the Consent Order, the record shows the responses failed to produce complete factual information and asserted objections that had long been waived. *See Golding v. Taylor*, 19 N.C. App. 245, 248, 198 S.E.2d 478, 480 (1973) ("[I]n the absence of an

extension of time, failure to object to interrogatories within the time fixed by the rule is a waiver of any objection . . ." ); N.C. Gen. Stat. § 1A-1, Rule 33 (2015) ("[t]he party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories . . . .").

Defendant argues the trial court abused its discretion by not making findings of fact and conclusions of law regarding how its responses were deficient or inconsistent with the Consent Order. Defendant fails to cite any authority supporting the contention that a trial court is required to make findings regarding specific discovery violations when imposing sanctions against a party. Contrary to Defendant's assertion, Rule 52(a)(2) of the North Carolina Rules of Civil Procedure states that "findings of fact and conclusions of law are necessary on decisions of any motion . . . only when requested by a party . . . ." N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2015). Our Supreme Court has held it is within the discretion of the trial court "whether to make a finding of fact if a party does not choose to compel a finding through the simple mechanism of so requesting." *Watkins v. Hellings*, 321 N.C. 78, 82, 361 S.E.2d 568, 571 (1987) ("It has been held repeatedly by this Court that '[w]hen the trial court is not required to find facts and make conclusions of law and does not do so, it is presumed that the court on proper evidence found facts to support its judgment.' ") (alteration in original) (quoting *Estrada v. Burnham*, 316 N.C. 318, 324,

341 S.E.2d 538, 542 (1986)). The record here does not reveal that Defendant asked the trial court to make factual findings.

We hold the trial court did not abuse its discretion by precluding Defendant from offering into evidence documents not produced before the aforementioned date.

*B. Protective Order*

Defendant further argues that the trial court exceeded the scope of the Sanctions Order by entering the Protective Order, preventing Defendant from obtaining admissions from Plaintiffs. Defendant asserts that this sanction amounts to a bar on Defendant's ability to pursue discovery. This argument is without merit. Defendant had ample opportunity to seek discovery prior to 19 January 2015. The Protective Order was an effectuation of the Sanctions Order, which provided a further extension of time to Defendant to provide long past due discovery responses. It was within the trial court's discretion to determine the scope of the Sanctions Order with respect to later discovery requests. Accordingly, the trial court did not abuse its discretion in entering the Protective Order.

## II. Standing

Defendant also challenges Plaintiffs' standing to bring this action in their capacities as the "Trustees of Parks Chapel." Defendant argues Plaintiffs ceased to be Trustees of Parks Chapel on 6 May 2010 following the merger of Parks Chapel into

Kingdom Impact, and that because of this cessation Plaintiffs were divested of standing. We disagree.

Defendant's argument misinterprets the capacity in which Plaintiffs bring this suit. Defendant asserts that Parks Chapel ceased to exist following the merger, and that Plaintiffs could not possibly have brought suit on behalf of a non-entity. But Plaintiffs' complaint specifically states the suit is being brought by Plaintiffs as trustees of Parks Chapel, a "non-incorporated entity." Defendant concedes in its answer and counterclaim that Plaintiffs were trustees of Parks Chapel at all relevant times. Regardless of the validity of the merger and the incorporation status of Parks Chapel, Plaintiffs have the ability to bring a suit as trustees of a non-incorporated religious organization seeking to assert property rights. *See* N.C. Gen. Stat. §§ 59B-4, 59B-5, 59B-15, and 61-2 (2015).

Although Defendant presented evidence by affidavit before the trial court that raises a factual dispute about Frances Jackson's status as a trustee of Parks Chapel, Defendant presented no evidence raising a factual dispute regarding Plaintiffs' status as trustees of Parks Chapel. Plaintiffs' claim is not dependent upon them comprising all of the trustees of Parks Chapel, but merely upon Defendant's failure to obtain the consent of all trustees to transfer the Property.

For more than two centuries, Chapter 61 of the North Carolina General Statutes has provided special protections for real property owned by churches. N.C.

Gen. Stat. § 61-2 provides that "[t]he trustees and their successors have power to . . . take and hold property, real and personal, in trust for such church or denomination, religious society or congregation; and they may sue or be sued in all proper actions, for or on account of the . . . property so held or claimed by them . . . ." N.C. Gen. Stat. § 61-3 (2015) provides, *inter alia*:

> All glebes, lands and tenements, heretofore purchased, given, or devised for the support of any particular ministry, or mode of worship, and all churches and other houses built for the purpose of public worship, and all lands and donations of any kind of property or estate that have been or may be given, granted or devised to any church or religious denomination, religious society or congregation within the State for their respective use, shall be and remain forever to the use and occupancy of that church or denomination, societies or congregations . . . and the estate therein shall be deemed and held to be absolutely vested, as between the parties thereto, in the trustees respectively of such churches, denominations, societies and congregations, for their several use, according to the intent expressed in the conveyance . . . .

North Carolina statute recognizes that real property can be held by an unincorporated association. "Real and personal property in this State may be acquired, held, encumbered, and transferred by a nonprofit association, whether or not the nonprofit association or a member has any other relationship to this State." N.C. Gen. Stat. § 59B-4. N.C. Gen. Stat. § 59B-15(a) further states that "[n]othing in this Chapter changes the law with reference to the holding and conveyance of land by the trustees of churches under Chapter 61 of the General Statutes where the land

is conveyed to and held by the trustees."  Plaintiffs, as trustees of Parks Chapel, are asserting a claim for real property held by them in trust for Parks Chapel. Accordingly, we hold Plaintiffs have standing to bring this quiet title action.

## III.    Summary Judgment

Lastly, Defendant argues that the trial court erred in granting Plaintiffs' motion for summary judgment because there existed before the trial court some evidence that raised genuine issues of material fact.  We disagree.

An appeal from an order granting summary judgment is reviewed *de novo* by this Court.  *Andresen v. Progress Energy, Inc.*, 204 N.C. App. 182, 184, 696 S.E.2d 159, 160 (2010) (citation omitted).  "Summary judgement is appropriate when there is no genuine issues as to any material fact and any party is entitled to a judgment as a matter of law."  *Id.* at 184, 696 S.E.2d at 160-61 (internal quotation marks and citations omitted).  "[A]n issue is genuine if it is supported by substantial evidence, and . . . is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action[.]"  *DeWitt v. Eveready Battery Co., Inc.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (internal quotation marks and citations omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and means more than a scintilla or a permissible inference[.]"  *Id.* (internal quotation marks and citations omitted).

"The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact." *Id.* (citing *Nicholson v. Am. Safety Util. Corp.*, 346 N.C. 767, 774, 488 S.E.2d 240, 244 (1997)). "The movant may meet this burden by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Collingwood v. General Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citations omitted). Once this burden is met, the nonmoving party must "produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial" to avoid dismissal. *Id.* (citation omitted). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Id.* (citing *Page v. Sloan*, 281 N.C. 697, 190 S.E.2d 189 (1972)).

"In order to establish a *prima facie* case for removing a cloud on title, a plaintiff must meet two requirements: (1) plaintiff must own the land in controversy, or have some estate or interest in it; and (2) defendant must assert some claim in the land which is adverse to plaintiff's title, estate or interest." *Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 461, 490 S.E.2d 593, 597 (1997) (citing *Wells v. Clayton*, 236 N.C. 102, 107, 72 S.E.2d 16, 20 (1952)).

Here, Defendant failed to show any genuine issue as to material facts existed or that Plaintiffs were not entitled to judgment as a matter of law. Defendant argues that there remain questions regarding: (1) whether "corporate formalities" were followed by Defendant related to the merger with Parks Chapel, including whether adequate notice was provided prior to the meeting to vote on the withdrawal from the Denomination; (2) whether a sufficient majority of the congregation of Parks Chapel actually voted to withdraw from the Denomination and the Conference; and (3) whether Frances Jackson, as a trustee of Parks Chapel, had authority to sign the deed transferring the title from Parks Chapel to Defendant.

Plaintiffs, as trustees of Parks Chapel, have standing to bring this action pursuant to N.C. Gen. Stat. §§ 59B-4, 59B-5, 59B-15, and 61-2, regardless of the validity of the merger and the vote to withdraw from the Denomination. These factual disputes need not be resolved to affirm the trial court's entry of summary judgment in favor of Plaintiffs. Plaintiffs have shown that there is no evidence in the record to support Defendant's contention that Frances Jackson, acting alone, had sole authority to transfer the Property. The undisputed evidence demonstrates that the deed from Parks Chapel to Kingdom Impact was invalid because (1) the deeds conveying the Property to the trustees of Free Will Baptist Church, predecessor to Parks Chapel, included restrictive language requiring that the Property be used by a church affiliated with the Denomination; (2) Parks Chapel, successor to Free Will

Baptist Church, continued the church's affiliation with the Denomination; and (3) Kingdom Impact is not affiliated with the Denomination. The undisputed evidence also demonstrates that France Jackson did not have sole authority to transfer the Property without the signatures of all trustees.

Because the purported transfer of real property to Kingdom Impact violated real property statutes, the trial court did not need to resolve any factual dispute regarding corporate governance to invalidate the transfer and enter summary judgment quieting title in the Property to Plaintiffs.

## Conclusion

For the above reasons, we hold that the trial court did not err in ordering sanctions or in granting Plaintiffs' motion for summary judgment because there did not exist any genuine issues of material fact and Plaintiffs were entitled to judgment as a matter of law. Accordingly, we affirm the trial court's sanctions and order for summary judgment.

AFFIRMED.

Judges BRYANT and TYSON concur.