McKnight v. Wakefield Missionary Baptist Church, Inc., 2021 NCBC 35.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 8299

CHARLOTTE MCKNIGHT and
AUDREY FOSTER, in their official
capacities as Trustees for and on
behalf of WAKEFIELD
MISSIONARY BAPTIST CHURCH,
AN UNINCORPORATED
ASSOCIATION,

Plaintiffs,

v.

WAKEFIELD MISSIONARY
BAPTIST CHURCH, INC.;
BARBARA WILLIAMS; APRIL
HIGH; ALTON HIGH; EKERE
ETIM; ROSALIND ETIM;
HOUSTON HINSON; NATALIE
HARRIS; and DARRYL HIGH,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS**

WAKEFIELD MISSIONARY
BAPTIST CHURCH, INC.,

Counterclaim
Plaintiff,

v.

CHARLOTTE MCKNIGHT;
AUDREY FOSTER; LEROY
JEFFREYS; and JULIUS
MONTAGUE, in their official
capacities as Trustees and/or Officers
for and on behalf of WAKEFIELD
MISSIONARY BAPTIST CHURCH,
AN UNINCORPORATED
ASSOCIATION,

Counterclaim
Defendants.

1. For over 150 years, Wakefield Missionary Baptist Church existed as an unincorporated religious association. Recently, the congregation has splintered due

to disputes over church finances and other matters. The schism has led to at least three lawsuits, this being the latest.

2. The plaintiffs, Charlotte McKnight and Audrey Foster, are church trustees. They allege that another group of trustees, improperly and without authorization, converted the church into an incorporated entity and transferred its real property to that new entity. McKnight and Foster have sued on behalf of the unincorporated association to void the reorganization and to unwind the transfers of church property.

3. The defendants have moved to dismiss all claims. For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion.

> *Michael A. Jones & Associates, P.L.L.C., by Michael A. Jones, for Plaintiffs/Counterclaim Defendants Charlotte McKnight and Audrey Foster and for Counterclaim Defendants Leroy Jeffreys and Julius Montague.*
>
> *Kitchen Law, PLLC, by S. C. Kitchen, for Defendant/Counterclaim Plaintiff Wakefield Missionary Baptist Church, Inc. and for Defendants Barbara Williams, April High, Alton High, Ekere Etim, Rosalind Etim, Houston Hinson, Natalie Harris, and Darryl High.*

Conrad, Judge.

I.
BACKGROUND

4. The following background assumes that the allegations of the verified amended complaint are true. (*See* First Am. Verified Compl., ECF No. 33 ["Compl."]; Verification of Am. Compl., ECF No. 38.)

5. Wakefield Missionary Baptist Church ("WMBC") is an unincorporated religious association with a constitution and bylaws establishing the structure and leadership of the church. (*See* Compl. ¶¶ 5, 17; Compl. Ex. 1, Wakefield Missionary

Baptist Church Constitution & Bylaws, ECF No. 33.1 ["WMBC Const."].) Under the constitution and bylaws, the church is governed by "its members," it "is subject to the control of no other ecclesiastical organization," and "none of its Ministries or Committees can usurp its executive governance or policy-making powers." (WMBC Const. Art. III, § 1; *see also* Compl. ¶ 17.)

6.    In 2019, internal disputes about church finances split the congregation. (*See* Compl. ¶ 16.) Caught in the middle, United Community Bank warned that it might have to file an interpleader action to determine who had authority over the church's bank accounts. (*See* Compl. ¶¶ 19, 20.) To avoid that, the church called a business meeting to elect new signatories to the accounts. McKnight and Foster were among those elected. (*See* Compl. ¶¶ 19–23.) As alleged, though, a group of the church's trustees (the "Trustee Defendants") refused to recognize the vote. (*See* Compl. ¶ 24.) The bank filed an interpleader action, (*see* Compl. ¶ 38), which remains pending in Wake County Superior Court (No. 19 CVS 9973) (the "Interpleader Action").

7.    In the weeks after the business meeting, the feud escalated rapidly. The Trustee Defendants terminated the senior pastor's employment contract, locked the doors to the church building, and purported to reorganize the church as a nonprofit corporation called Wakefield Missionary Baptist Church, Inc. ("WMBC Inc."). (*See* Compl. ¶¶ 18–25, Ex. 3, ECF No. 33.3.) Later, the Trustee Defendants transferred the church's real property to WMBC Inc. (*See* Compl. ¶ 29, Exs. 4, 5, ECF Nos. 33.4, 33.5.) As alleged, they had no authority under the church constitution and bylaws to

do any of these things.  (*See* Compl. ¶¶ 24, 25, 29, 35, 36, 38–40; *see also* WMBC Const. Art. III, § 1; Art. VIII, § 3.)

8.    Since then, the Trustee Defendants have claimed that WMBC Inc. is the successor-in-interest to WMBC and that WMBC no longer exists as an unincorporated association.  (*See* Compl. ¶¶ 25–28, 41.)  For example, in the Interpleader Action, they moved to have WMBC Inc. substituted as a party in WMBC's place.  The trial court in that action denied the motion and concluded that both WMBC and WMBC Inc. were necessary parties to determine the rights to the bank accounts.  (*See* ECF No. 18.10.)  The Trustee Defendants appealed that decision to the North Carolina Court of Appeals (No. 20-335), arguing, among other things, that the Interpleader Action violated the Trustee Defendants' First Amendment rights to be free from ecclesiastical entanglement.

9.    While that appeal was pending, McKnight and Foster ("Plaintiffs"), as trustees of WMBC, brought this suit on its behalf.  (*See* Compl. ¶¶ 1, 4.)[1]  They have asserted claims for breach of fiduciary duty, constructive fraud, and unjust enrichment against the Trustee Defendants and WMBC Inc. ("Defendants").  They seek, among other things, to void the transfers of the church's real property to WMBC Inc.  (*See* Compl. ¶ 30.)  WMBC Inc. has counterclaimed for trade name infringement, conversion, and civil conspiracy.  (*See* ECF No. 6.)

10.    Defendants have filed a motion to dismiss the amended complaint.  The motion has been fully briefed, and the Court held a hearing on 11 March 2021.

---

[1] Originally, Leroy Jeffreys and Julius Montague were also plaintiffs, but they have voluntarily dismissed their claims.  (ECF No. 42.)  They remain counterclaim defendants.

11.   After the hearing, the Court of Appeals issued its opinion in the Interpleader Action, dismissing the appeal as interlocutory and concluding that the Interpleader Action did not constitute impermissible ecclesiastical entanglement. *See United Cmty. Bank v. Wakefield Missionary Baptist Church*, 2021-NCCOA-89 (unpublished). Given the similarities of some of the issues to be litigated in this case, the Court invited supplemental briefing on the status of the Interpleader Action and the implications of the decision and reasoning of the Court of Appeals. (ECF No. 46.)

12.   Defendants' motion to dismiss is now ripe for resolution.

II.
ANALYSIS

13.   Defendants seek to dismiss the amended complaint for lack of jurisdiction and for lack of merit. The Court begins with the jurisdictional issues because subject matter jurisdiction is the "indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act." *In re T.R.P.*, 360 N.C. 588, 590 (2006).

A. Subject Matter Jurisdiction

*1. Standing*

14.   "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626 (2002) (citation omitted). Defendants argue that Plaintiffs lack standing for three reasons.

15.   First, Defendants argue that Plaintiffs are not trustees of WMBC and therefore do not have standing to sue on its behalf. (*See* Br. in Supp. 8–9, ECF No.

36.) By statute, an unincorporated church's trustees have standing to sue on its behalf so long as the suit relates to property held in their capacity as trustees. *See* N.C.G.S. § 61-2 (stating that trustees of an unincorporated church have the power to hold property "in trust for such church" and "may sue or be sued in all proper actions, for or on account of the donations and property so held or claimed by them, and for and on account of any matters relating thereto"); *Pressly v. Walker*, 238 N.C. 732, 733–35 (1953); *Wheeless v. Barrett*, 229 N.C. 282, 287–89 (1948); *Burns v. Kingdom Impact Glob. Ministries, Inc.*, 251 N.C. App. 724, 731–32 (2017), *review denied*, 369 N.C. 564.

16. Here, the amended complaint alleges that McKnight and Foster are trustees of WMBC. (*See* Compl. ¶¶ 1, 4.) Defendants have not submitted evidence to refute this allegation. Their contention that the allegation is insufficient or contradicted by other allegations in the amended complaint is meritless. McKnight and Foster were required only to "make an affirmative averment showing [their] capacity and authority to sue." N.C. R. Civ. P. 9(a). They have done so, and the Court must take the verified allegations as true at this stage. *See, e.g.*, *Elhulu v. Alshalabi*, 2021 NCBC LEXIS 44, at *11 (N.C. Super. Ct. Apr. 29, 2021) (noting that when a motion to dismiss challenges the sufficiency of the allegations to support standing, the Court must accept the allegations as true "and construe them in the light most favorable to the plaintiff" (citation and quotation marks omitted)).

17. Second, at the hearing, Defendants argued that Plaintiffs were required to make a pre-suit demand just as a shareholder must before bringing a derivative suit

on behalf of a corporation. Defendants have not cited any authority for that proposition. Chapter 61 contains no such requirement, and our appellate courts have never imposed one. *See Pressly*, 238 N.C. at 733–35; *Wheeless*, 229 N.C. at 287–89; *Burns*, 251 N.C. App. at 731–32; *cf. Bridges v. Oates*, 167 N.C. App. 459, 468–69 (2004) (imposing pre-suit requirements in suit brought on behalf of incorporated church and distinguishing such actions from those brought on behalf of unincorporated churches under Chapter 61).

18. Third, Defendants argue that WMBC no longer exists. According to Defendants, WMBC converted to WMBC Inc. "pursuant to an approved plan of conversion," (Br. in Supp. 4), and therefore "cease[d] its prior form of organization," N.C.G.S. § 55-11A-04(1). Defendants argue that Plaintiffs cannot sue on behalf of an unincorporated association that has ceased to exist.[2]

19. Whether the incorporation of the church was authorized or not is one of the key issues underlying this case. Plaintiffs allege that the conversion is void—and, thus, that WMBC still exists—because the Trustee Defendants did not comply with the governing constitution and bylaws. (*See* Compl. ¶¶ 17, 25, 30, 40, 46, 56.) Defendants may disagree, but "[t]he challenge to jurisdiction based on an asserted lack of standing does not call upon the Court to adjudicate the case based on its

---

[2] This is not a question of personal jurisdiction, as Defendants suggest. (*See* Br. in Supp. 7.) "Personal jurisdiction refers to the Court's ability to assert judicial power *over the parties* and bind them by its adjudication." *Capitala Grp., LLC v. Columbus Advisory Grp. LTD*, 2018 NCBC LEXIS 183, at *8 (N.C. Super. Ct. Dec. 3, 2018) (emphasis added) (quoting *In re A.B.D.*, 173 N.C. App. 77, 83 (2005)). There is no question that the Court has jurisdiction over the parties before it. The issue Defendants have raised pertains to an entity that is not a party—WMBC—and whether Plaintiffs may sue on its behalf if it no longer exists. That is an issue of standing, not personal jurisdiction.

merits." *Wilkie v. Stanley*, 2011 NCBC LEXIS 11, at *11 (N.C. Super. Ct. Apr. 20, 2011) (citing *Cline v. Teich*, 92 N.C. App. 257, 264 (1988)). At this early pleading stage, Plaintiffs' verified allegations are sufficient to support their standing to represent WMBC's property interests under section 61-2. *See Burns*, 251 N.C. App. at 731 (rejecting defendant's argument that the church "ceased to exist following [a] merger, and that Plaintiffs could not possibly have brought suit on behalf of a non-entity" and holding that "[r]egardless of the validity of the merger and the incorporation status of [the church], Plaintiffs have the ability to bring a suit as trustees of a non-incorporated religious organization seeking to assert property rights" (citations omitted)).

20. The Court therefore concludes that Plaintiffs have adequately alleged standing, with one exception. As trustees, Plaintiffs may assert claims based on the property they hold in trust for the church. This does not include the allegations related to the termination of the senior pastor's employment contract. (*See* Compl. ¶ 38.) Even as trustees, Plaintiffs lack standing to pursue claims based on those allegations, and the Court therefore dismisses the claims to that extent.

## 2. *Ecclesiastical Entanglement*

21. Defendants argue that the Court lacks subject matter jurisdiction under the ecclesiastical entanglement doctrine. (*See* Br. in Supp. 11–13.) This doctrine derives from the First Amendment, which "severely circumscribes the role that civil courts may play in resolving church property disputes." *Harris v. Matthews*, 361 N.C. 265, 271 (2007) (quoting *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969)). Simply put, secular courts

may not adjudicate "controversies over religious doctrine and practice." *Id.* (quoting *Presbyterian*, 393 U.S. at 449). When faced with a dispute between two factions of a church, "court review should be limited to questions that can be resolved on the basis of neutral principles of law such as (1) who constitutes the governing body of this particular church, and (2) who has that governing body determined to be entitled to use the properties." *Id.* at 272 (cleaned up).

22. The Court of Appeals addressed this very question in the related Interpleader Action involving these same parties. There, the Trustee Defendants argued that the trial court lacked jurisdiction because the case "concerned determinations as to who are members of the Church and of the roles and authorities of members of the Church." *United Cmty. Bank*, 2021-NCCOA-89, ¶ 6 (internal quotation marks omitted). Looking to *Harris*, the Court of Appeals rejected that argument, emphasizing that "the court *does* have jurisdiction 'to determine *who constitutes the governing body of [the church]* or *whom that body has authorized to expend church resources*' because those questions can be answered by the application of 'neutral principles of law.' " *Id.* ¶ 14 (quoting *Harris*, 361 N.C. at 273). The court held that "the issue of who has control over the Church's assets" could be adjudicated without ecclesiastical entanglement "because the trial court can resolve the controversy based on neutral principles of law." *Id.* ¶ 16.

23. Defendants have given no persuasive reason to reach a different result here. As both sides acknowledge, the issues underlying this case and the Interpleader Action are the same: who constituted the governing body of WMBC at certain times

and whether their actions were authorized by its constitution and bylaws. (*See* Pls.' Suppl. Br. 4–5, ECF No. 47; Defs.' Suppl. Br. 5, ECF No. 48.) On the limited record before the Court, it does not appear that these issues implicate church doctrine. Rather, as alleged, they can be resolved by looking to WMBC's constitution and bylaws. (*See* Compl. ¶¶ 35, 36, 38–40, 46, 56; WMBC Const. Art. III, § 1; Art. VIII, § 3.) Accordingly, for substantially the same reasons articulated by the Court of Appeals, the claims in this case may be decided on neutral principles of law.[3]

24. In their supplemental brief, Defendants raise a new argument that while courts may have jurisdiction over *in rem* actions, the ecclesiastical entanglement doctrine prohibits jurisdiction over *in personam* actions like this one. (*See* Defs.' Suppl. Br. 3–4.) The Court disagrees. For one thing, Plaintiffs' claims are centered on the rights to church property and the Trustee Defendants' authority as to that property. And in any event, while church disputes often arise in the *in rem* context, courts can (and do) adjudicate church disputes in the *in personam* context too. *See, e.g.*, *Doe v. Diocese of Raleigh*, 242 N.C. App. 42, 49–58 (2015); *Smith v. Privette*, 128

---

[3] The Court of Appeals has held in unique circumstances that the application of church bylaws may depend on church doctrine or practice. *See Emory v. Jackson Chapel First Missionary Baptist Church*, 165 N.C. App. 489 (2004). There, the court was asked to decide whether long-standing church customs altered the interpretation of the bylaws. *See id.* at 492–93. Church customs were an ecclesiastical matter, and the church's "interpretation of the notice requirements based on long-standing customs and practices of the church" thus required "judicial deference." *Id.* at 493 (citations omitted). No such custom or practice is present in this case. Plaintiffs allege that WMBC's constitution and bylaws are clear and unambiguous, and Defendants have put forward no facts or argument to contradict this. *See Lippard v. Holleman*, 271 N.C. App. 401, 411 (2020) (observing that *Emory* held that courts cannot "look into a church's internal customs or practices" but reaffirming that "courts may resolve church disputes through neutral principles of property law" (citations omitted)), *appeal dismissed, review denied*, 375 N.C. 492, *cert. petitioned*, No. 20-1174 (U.S. Feb. 22, 2021).

N.C. App. 490, 495 (1998), *appeal dismissed*, 348 N.C. 284.  What matters for purposes of the ecclesiastical entanglement doctrine is not the *label* of a claim, but rather the *issues* to be determined.

25.  Based on the pleadings, Plaintiffs have not asked the Court to resolve questions governed by church doctrine or customs.  The Court therefore denies Defendants' motion to dismiss for lack of subject matter under the First Amendment's ecclesiastical entanglement doctrine.[4]

### B.  Failure to State a Claim

26.  The Court now turns to Defendants' arguments under Rule 12(b)(6).  A Rule 12(b)(6) motion "tests the legal sufficiency of the complaint."  *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted).  The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."  *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (citation and quotation marks omitted).

27.  In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences in the light most favorable to the nonmoving party.  *See Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019); *CommScope Credit Union v. Butler & Burke, LLP*, 369

---

[4] Because Plaintiffs lack standing to pursue any claims premised on the senior pastor's employment contract, the Court need not consider whether that issue would implicate ecclesiastical entanglement.

N.C. 48, 51 (2016). But the Court need not accept as true any "conclusions of law or unwarranted deductions of fact." *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (citation and quotation marks omitted). The Court also may consider documents "attached to and incorporated within [the] complaint" but may not consider matters outside the complaint. *Bucci v. Burns*, 2018 NCBC LEXIS 37, at *8 (N.C. Super. Ct. Apr. 25, 2018) (citations and quotation marks omitted).

### 1. *Breach of Fiduciary Duty & Constructive Fraud*

28. Plaintiffs' first and second claims are for breach of fiduciary duty and constructive fraud, respectively.[5] These claims have overlapping elements. An essential element of each is the existence of a confidential or fiduciary relationship. *See, e.g.*, *Dalton v. Camp*, 353 N.C. 647, 651 (2001). A fiduciary relationship is "one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id.* at 651–52 (citation and quotation marks omitted). The "primary difference" between constructive fraud and breach of fiduciary duty "is the constructive fraud requirement that the defendant benefit himself" through the breach. *White v. Consol. Plan., Inc.*, 166 N.C. App. 283, 294 (2004).

29. As Defendants correctly observe, the amended complaint does not allege that WMBC Inc. owed a fiduciary duty to WMBC. Plaintiffs do not address this deficiency or contend otherwise in their brief. Accordingly, the Court grants the motion to dismiss these claims to the extent asserted against WMBC Inc.

---

[5] The amended complaint also refers to actual fraud, (Compl. ¶ 55), but Plaintiffs' response brief clarifies that the claim is for constructive fraud only, (Opp'n 13).

30. As to the Trustee Defendants, however, the amended complaint does sufficiently allege the existence of a fiduciary relationship. As alleged, the Trustee Defendants were trustees of WMBC when they took the actions at issue. (*See* Compl. ¶¶ 7–14, 34, 37.) The trustees of an unincorporated church owe the church a statutorily imposed fiduciary duty. *See* N.C.G.S. § 61-2 (stating that a trustee holds property "in trust" for the church and "shall be accountable to the church[ ] . . . for the use and management of such property"); *Bridges*, 167 N.C. App. at 465 (noting that trustee "owed a duty to the church" under section 61-2). The amended complaint also adequately alleges that the Trustee Defendants breached their fiduciary duties at least by seeking to reorganize the church without authorization and by transferring away its property. (*See, e.g.*, Compl. ¶¶ 24, 25, 29, 34–36, 38–40.)

31. Defendants argue that the constructive fraud claim must be dismissed because the amended complaint fails to allege that Defendants benefited from their conduct. (*See* Br. in Supp. 13–15.) But there are allegations that the Trustee Defendants, through their breaches, "obtain[ed] wrongful benefits of possession and control" over the church property and that they transferred the property to an entity they themselves controlled. (Compl. ¶¶ 24, 38, 50, 55.) Read liberally, these allegations suggest that the Trustee Defendants obtained a personal benefit from the transfer of property to WMBC Inc. on account of their relationship with and control of WMBC Inc.

32. The Court therefore denies Defendants' motion to dismiss the claims for breach of fiduciary duty and constructive fraud to the extent asserted against the Trustee Defendants.

### 2. *Unjust Enrichment*

33. Plaintiffs' third claim is for unjust enrichment against WMBC Inc. A claim for unjust enrichment has five elements: (1) "one party must confer a benefit upon the other party;" (2) "the benefit must not have been conferred officiously;" (3) "the benefit must not be gratuitous;" (4) "the benefit must be measurable;" and (5) "the defendant must have consciously accepted the benefit." *Kapur v. IMW EMR, LLC*, 2020 NCBC LEXIS 148, at *16 (N.C. Super. Ct. Dec. 18, 2020) (quoting *JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 541–42 (2013)). Defendants' sole argument is on the second element—that WMBC Inc. did not solicit or induce the transfer and therefore cannot be held liable. (*See* Br. in Supp. 16–17.)

34. The amended complaint alleges that the Trustee Defendants were members of WMBC Inc.'s board of directors, that WMBC Inc. knew the Trustee Defendants owed WMBC a fiduciary duty and lacked the authority to transfer the property, that WMBC Inc. approved and ratified their acts, and that it "received and consciously accepted" ownership of the property. (Compl. ¶¶ 59–67.) Reading the allegations liberally and drawing all inferences in Plaintiffs' favor, WMBC Inc. was an active, willing, and involved—not passive—participant in the wrongful transfer of property. At this stage, these allegations are sufficient. The Court therefore denies Defendants' motion to dismiss the claim for unjust enrichment.

*3. Immunity*

35.    Finally, Defendants argue that any claims against the Trustee Defendants should be dismissed because they have statutory immunity under section 61-1(b) for acts taken in their capacity as trustees.[6] (*See* Br. in Supp. 17–18.) Plaintiffs did not directly respond to this argument in their response brief. Even so, Defendants have not shown that section 61-1(b) is a basis to dismiss the claims.

36.    The statute provides that a church trustee "shall be immune individually from civil liability *for monetary damages*" in certain circumstances. N.C.G.S. § 61-1(b) (emphasis added). Plaintiffs seek several nonmonetary remedies, including the voiding of the transfers of the church's property and the imposition of a constructive trust on WMBC Inc. (*See* Compl. at 12–13.) Even if section 61-1(b) applies, it would operate as a limitation on recovery, not as a ground for dismissal altogether.

37.    In addition, the statute recites various exceptions to immunity—for example, if the trustee "[w]as not acting in good faith" or engaged in "willful or wanton misconduct." N.C.G.S. § 61-1(b)(3), (4); *see also id.* § 61-1(b)(7) (establishing an exception to immunity if the trustee "[i]s sued in an action that would qualify as a derivative action if the organization were a for-profit corporation"). The amended

---

[6] Defendants contend that this issue is reviewed under Rule 12(b)(2) for lack of personal jurisdiction. The cases addressing section 61-1(b) do not refer to personal jurisdiction but instead evaluate immunity on the merits at summary or final judgment. *See St. John Christian Holiness Church of God v. Hines*, No. COA07-820, 2008 N.C. App. LEXIS 514, at *6, *12–13 (N.C. Ct. App. Mar. 18, 2008); *Daniel v. Wray*, 158 N.C. App. 161, 165–66, 174–75 (2003). Thus, Rule 12(b)(6) is the correct lens for reviewing an immunity-based challenge to the pleadings.

complaint includes allegations of constructive fraud and intentional acts that the Trustee Defendants knew they had no authority to take. If true, this alleged conduct might satisfy one or more of the exceptions in section 61-1(b). Defendants have not definitively shown otherwise.

38. Thus, section 61-1(b) does not require dismissal of the asserted claims at this stage of the litigation. The Trustee Defendants are free to assert immunity as a defense on a more fully developed record.

## III.
## CONCLUSION

39. For all these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss and **ORDERS** as follows:

a. The Court **GRANTS** the motion to dismiss to the extent any claims are premised on termination of the senior pastor's employment contract. That portion of any claim is dismissed without prejudice.

b. The Court **GRANTS** the motion to dismiss the claims for breach of fiduciary duty and constructive fraud to the extent they are asserted against WMBC Inc. Those claims against WMBC Inc. are dismissed without prejudice.

c. In all other respects, the Court **DENIES** the motion.

**SO ORDERED**, this the 14th day of June, 2021.

                                        /s/ Adam M. Conrad
                                        Adam M. Conrad
                                        Special Superior Court Judge
                                         for Complex Business Cases