Brakebush Brothers., Inc. v. Certain Underwriters at Lloyd's of London - Novae 2007 Syndicate Subscribing to Pol'y No. 93PRX17F157, 2022 NCBC 23.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| DAVIE COUNTY | 20 CVS 367 |

| | |
|---|---|
| BRAKEBUSH BROTHERS, INC.<br>AND HOUSE OF RAEFORD<br>FARMS,<br><br>    Plaintiffs,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT<br>LLOYD'S OF LONDON - NOVAE<br>2007 SYNDICATE SUBSCRIBING<br>TO POLICY WITH NUMBER<br>93PRX17F157, HALLMARK<br>SPECIALTY INSURANCE CO.,<br>EVANSTON INSURANCE CO.,<br>MAXUM INDEMNITY CO.,<br>HUDSON SPECIALTY INSURANCE<br>CO., LIBERTY SURPLUS<br>INSURANCE CORPORATION,<br>IRONSHORE SPECIALTY<br>INSURANCE CO., AND CERTAIN<br>UNDERWRITERS AT LLOYD'S OF<br>LONDON -BRIT SYNDICATE<br>2987 SUBSCRIBING TO POLICY<br>WITH NUMBER PD-10972-00,<br><br>    Defendants. | **ORDER AND OPINION ON<br>DEFENDANTS' JOINT MOTION TO<br>DISMISS AND CERTAIN<br>DEFENDANTS' MOTION TO<br>RECONSIDER** |

THIS MATTER comes before the Court on Defendants' Joint Motion to Dismiss Amended Complaint ("Motion to Dismiss") (ECF No. 112) and on Defendants Maxum, Ironshore, Novae, Hallmark, and Hudson's Motion to Reconsider ("Motion to Reconsider") (ECF No. 114).

The Court, having considered the motion, the briefs of the parties, the arguments of counsel, and all applicable matters of record, CONCLUDES, for the reasons set forth below, that (1) Defendants' Motion to Dismiss should be GRANTED,

in part, and DENIED, in part; and (2) the Motion to Reconsider should be DENIED as moot.

*Kilpatrick Townsend & Stockton LLP, by Susan Boyles, and Dorsey & Whitney LLP, by Eric Weisenburger, Vernle C. Durocher, and Kathryn Ann Johnson, for Plaintiffs Brakebush Brothers Inc. and House of Raeford Farms.*

*Nelson Mullins Riley & Scarborough LLP, by G. Gray Wilson and Stuart H. Russell, and Tressler, LLP, by Timothy Jabbour, Anthony Tessitore, and Kiera Fitzpatrick, for Defendants Certain Underwriters at Lloyd's of London – Brit Syndicate 2987, Evanston Insurance Company, Maxum Indemnity Company, Hudson Specialty Insurance Company, Liberty Surplus Insurance Corporation, and Ironshore Specialty Insurance Company.*

*Butler Weihmuller Katz Craig LLP, by Clark Schirle, Khrystyne Smith, and L. Andrew Watson, for Defendant Certain Underwriters at Lloyd's of London Novae 2007 Syndicate.*

*Akerman, LLP, by Bryan G. Scott, for Defendant Hallmark Specialty Insurance Company.*

Davis, Judge.

## INTRODUCTION

1. The present motions raise two primary issues. First, the Court must determine when a new plaintiff may be substituted under N.C. R. Civ. P. 17 as the real party in interest and allowed to bring certain claims against the named defendants under a "relation back" theory where the assertion of those claims would otherwise be barred by the statute of limitations. Second, the Court has been asked— based on the existence of new case law—to revisit its prior ruling on the issue of whether North Carolina law allows an assignee of the right to receive proceeds under

an insurance policy to sue the assignor's insurer on theories of bad faith and unfair and deceptive trade practices.

## FACTUAL AND PROCEDURAL BACKGROUND

2.    The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites those facts contained in the complaint (and in documents attached, referred to, or incorporated by reference in the complaint) that are relevant to the Court's determination of the motion. *See, e.g., Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).

3.    On 14 December 2017, a fire caused substantial damage to a chicken processing facility located in Mocksville, North Carolina. (Amended Complaint, ECF No. 100, at ¶ 2.) At the time of the fire, the facility was owned by Plaintiff House of Raeford Farms, Inc. ("Raeford"), but Plaintiff Brakebush Brothers Inc. ("Brakebush") "was in the process of purchasing the [facility] from Raeford when the fire occurred." (*Id.*)

4.    As of the date of the fire, Raeford had obtained two layers of commercial property insurance coverage for the facility: (1) a *primary* insurance policy issued by "Certain Underwriters at Lloyd's, London and various syndicates subscribing to that policy" with a limit of $20,000,000 ("the Primary Policy"); and (2) eight *excess* insurance policies that provided, in total, limits of $30,000,000 in "excess of the $20 million primary limits." (*Id.* at ¶¶ 33–34.)[1]

---

[1] In this opinion, these eight policies are at times referred to collectively as the "Excess Policies."

5.     The insurers who issued the Excess Policies were all originally named as Defendants in this action: Certain Underwriters at Lloyd's of London – Novae 2007 Syndicate Subscribing to Policy With Number 93PRX17F157 ("Novae"), Hallmark Specialty Insurance Co. ("Hallmark"), Evanston Insurance Co. ("Evanston"), Maxum Indemnity Co. ("Maxum"), Hudson Specialty Insurance Co. ("Hudson"), Liberty Surplus Insurance Corporation ("Liberty"), Ironshore Specialty Insurance Co. ("Ironshore"), and Certain Underwriters at Lloyd's of London – Brit Syndicate 2987 Subscribing to Policy With Number PD-10972-00 ("Brit").  (Complaint, ECF No. 3, at ¶ 31.)[2]

6.     Brakebush and Raeford executed an Asset Purchase Agreement ("A.P.A.") on 3 July 2018.  (ECF No. 100, at ¶ 30.)  As a part of the transaction, Raeford "attempted to assign Raeford's right to all insurance benefits, including all rights and proceeds under its excess property insurance policies relating to the loss" resulting from the fire.  (*Id*. at ¶ 2.)  Approximately five days before the A.P.A. was executed, the insurers who had issued the Primary Policy gave written consent to this assignment.  (*Id*. at ¶ 31.)

7.     Neither Brakebush nor Raeford, however, obtained consent from any of the Excess Insurers prior to the assignment of Raeford's right to collect insurance proceeds under these policies to Brakebush.  (*Id*.)

8.     On 3 February 2020, Brakebush submitted a report to Crawford and Company, a claims management company hired by one or more of the insurers,

---

[2] Defendants are at times referred to collectively in this opinion as the "Excess Insurers."

claiming that the overall fire damage loss to the insured property totaled $41,274,429. (*Id.* at ¶¶ 35–38.) As Raeford had already received $4,241,277.18 under the Primary Policy prior to the sale, Brakebush asserted that it was entitled to the remaining $15,758,722.82 of the policy limits under the Primary Policy "for amounts it incurred after the sale was completed." (*Id.* at ¶ 39.) On or about 29 April 2020, Brakebush received a final payment exhausting the $20 million in coverage under the Primary Policy. (*Id.* at ¶ 39.) Brakebush then "contacted counsel for the Excess Insurers and demanded payment of insurance proceeds for the remainder" of the loss. (*Id.* at ¶ 40.)

9. The Excess Insurers refused to pay the full amount demanded by Brakebush, instead offering only a combined $4,221,465.83, a substantially smaller amount than Brakebush's demand. (*Id.* at ¶ 41.) The Excess Insurers initially took the position that they would make this smaller payment only if Brakebush agreed that said payment constituted "full and final payment for all covered damages." (*Id.*)

10. Since 1 May 2020, Brakebush has repeatedly requested that the Excess Insurers explain why they refused to pay the remaining $21 million that Brakebush had demanded. (*Id.* at ¶ 43.) At some point, the Excess Insurers provided Brakebush with "Claim Work Papers," which Brakebush alleges "showed that the Excess Insurers owed at least $5,782,089.14 to [Brakebush]." (*Id.* at ¶¶ 44–45.)

11. The Excess Insurers ultimately agreed to pay $4,221,465.83 to Brakebush without requiring Brakebush to stipulate that this payment constituted a "full and final payment," thereby allowing Brakebush to continue pursuing the total amount it sought under the Excess Policies for the fire damage. (*Id.* at ¶ 44.)

12.     On 8 October 2020, Brakebush filed its original Complaint initiating this action in Davie County Superior Court against the Excess Insurers.  In its Complaint, Brakebush asserted a claim for a declaratory judgment regarding the obligations of the Excess Insurers along with claims for breach of contract, bad faith, and unfair or deceptive trade practices (UDTP).  (ECF No. 3, at ¶¶ 47–79.)  This case was designated a mandatory complex business case on 2 December 2020 and assigned to the Honorable Gregory P. McGuire.  (ECF Nos. 1, 2.)

13.     On 6 January 2021, Defendants filed a Joint Motion to Dismiss in which they asserted various legal grounds for the dismissal of the claims asserted by Brakebush.  (ECF No. 42.)

14.     On 1 July 2021, this matter was reassigned to the undersigned.  (ECF No. 79.)

15.     On 1 November 2021, the Court issued an Order and Opinion (ECF No. 93) concluding that Brakebush possessed standing to assert its claims for breach of contract and declaratory judgment under the policies issued by Maxum, Ironshore, Novae, Hallmark, and Hudson (collectively, the "Assigned Insurers"), but *not* under the policies issued by Brit, Evanston, or Liberty (collectively, the "Unassigned Insurers").  (ECF No. 93, at ¶ 66.)[3]  The Court also declined to dismiss Brakebush's claims for bad faith and UDTP against the Assigned Insurers but dismissed those claims as to the Unassigned Insurers pursuant to Rule 12(b)(1) for lack of standing.

---

[3] In essence, the basis for the Court's ruling was that specific language in the Brit, Evanston, and Liberty policies required the consent of the insurer (which was never obtained) before the assignment from Raeford to Brakebush could become legally effective.

(*Id*. at ¶¶ 68, 83.)  Additionally, the Court denied Defendants' Motion to Dismiss under 12(b)(6) as to all claims against the Assigned Insurers.  (*Id*. at p. 37.)

16.     Following the issuance of the Court's Order and Opinion and prior to the filing of any responsive pleading by Defendants, Brakebush filed an Amended Complaint on 10 December 2021, which added Raeford as an additional named plaintiff alongside Brakebush.  (ECF No. 100.)  The Amended Complaint asserted the following claims: declaratory judgment by Brakebush against the Assigned Insurers; declaratory judgment by Raeford against the Unassigned Insurers; breach of contract by Brakebush against the Assigned Insurers; breach of contract by Raeford against the Unassigned Insurers; bad faith denial and handling of claims by Brakebush against the Assigned Insurers; UDTP by Brakebush against the Assigned Insurers; and unjust enrichment by Raeford against the Unassigned Insurers.  (*Id*. at ¶¶ 51–105.)

17.     On 31 January 2022, Defendants filed a Joint Motion to Dismiss Amended Complaint, seeking dismissal of (1) all claims asserted by Raeford; and (2) Brakebush's reasserted claims for bad faith and UDTP.  (ECF No. 112.)  On that same day, the Assigned Insurers filed a Motion to Reconsider in which they seek reconsideration of the portion of the Court's 1 November 2021 Order and Opinion holding that Brakebush possessed standing to assert bad faith and UDTP claims against them.  (ECF No. 114.)

18.     A hearing was held on 14 April 2022.  The motions are now ripe for decision.

## LEGAL STANDARD

19. Defendants' motion to dismiss implicates both N.C.R. Civ. P. 12(b)(1) and 12(b)(6). Defendants argue that Brakebush lacks standing to assert its bad faith and UDTP claims under Rule 12(b)(1). They contend that all of Raeford's claims should be dismissed pursuant to 12(b)(6) based on the statute of limitations.

20. "A plaintiff's standing to assert its claims may be challenged under either Rule 12(b)(1) or Rule 12(b)(6) of the North Carolina Rules of Civil Procedure." *Raja v. Patel*, 2017 NCBC LEXIS 25, at *11 (N.C. Super. Ct. Mar. 23, 2017) (citations omitted). A Rule 12(b)(1) motion challenges a court's jurisdiction over the subject matter of the plaintiff's claims. N.C.R. Civ. P. 12(b)(1). "Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest," *In re T.R.P.*, 360 N.C. 588, 590 (2006), and "has been defined as 'the power to hear and to determine a legal controversy; to inquire into the facts, apply the law, and to render and enforce a judgment,' " *High v. Pearce*, 220 N.C. 266, 271 (1941) (citations omitted). "[T]he proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465 (1964) (citation omitted).

21. "As the party invoking jurisdiction, plaintiff[] ha[s] the burden of establishing standing." *Queen's Gap Cmty. Ass'n v. McNamee,* 2011 NCBC LEXIS 37, at **4 (N.C. Super. Ct. Sept. 23, 2011) (cleaned up). In determining the existence of subject matter jurisdiction, the Court may consider matters outside the pleadings. *Emory v. Jackson Chapel First Missionary Baptist Church*, 165 N.C. App. 489, 491 (2004) (citation omitted). "However, if the trial court confines its evaluation [of

standing] to the pleadings, the court must accept as true the [claimant]'s allegations and construe them in the light most favorable to the [claimant]." *Munger v. State*, 202 N.C. App. 404, 410 (2010) (quoting *DOT v. Blue*, 147 N.C. App. 596, 603 (2001)).

22. "It is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)). The Court may also "reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster v. Francis*, 199 N.C. App. 572, 577 (2009) (cleaned up).

23. Finally, Defendants' Motion to Reconsider is brought pursuant to Rule 54(b). "This Court has summarized the grounds upon which a trial court will generally grant a motion to reconsider an interlocutory order as follows: (1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice." *Pender Farm Dev., LLC v. NDCO, LLC*, 2020 NCBC LEXIS 110, at *5 (N.C. Super. Ct. Sept. 25, 2020) (cleaned up).

# ANALYSIS

## I.     Validity of Claims Asserted by Raeford

24.     In their first argument, Defendants contend that the claims Raeford seeks to assert are time-barred because they were not asserted until the Amended Complaint was filed, which was more than three years after the date of the fire.  In response, Plaintiffs argue as follows: (1) the Court's 1 November 2021 Order and Opinion holds that the purported assignment from Raeford to Brakebush was invalid as to the Unassigned Insurers; (2) the implication of the Court's ruling on that issue is that *Raeford* is the real party in interest to assert the breach of contract and declaratory judgment claims against the Unassigned Insurers set out in the original Complaint; and (3) Rule 17 allows a real party in interest to be substituted in place of the original plaintiff under such circumstances and for the claims asserted by the real party in interest to relate back to the date the Complaint was originally filed. Alternatively, Plaintiffs argue that the statute of limitations should be equitably tolled to preserve Raeford's right to bring these claims or that Defendants should be equitably estopped from asserting a statute of limitations defense.

25.     Fire insurance policies are governed by a three-year statute of limitations.  N.C.G.S. § 58-44-16(f)(18) (2021) ("No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law unless all the requirements of this policy have been complied with and unless commenced within three years after inception of the loss.").

26.     It is undisputed that the fire giving rise to this lawsuit occurred on 14 December 2017, meaning that the claims seeking proceeds for fire damage under Defendants' policies were required to be brought within three years of that date. Although Brakebush's original Complaint was filed within that time period, the Amended Complaint was not.  Under North Carolina law, "[c]laims included in an amended pleading relate back to the filing of the original pleading when the original pleading gives sufficient 'notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.' " *Cabrera v. Hensley*, 2012 NCBC LEXIS 42, at **10 (N.C. Super. Ct. July 16, 2012) (quoting N.C. R. Civ. P. 15(c)).  However, "while Rule 15 of the North Carolina Rules of Civil Procedure permits the relation-back doctrine to extend periods for pursuing *claims*, it does not apply to *parties*." *Estate of Fennell v. Stephenson*, 354 N.C. 327, 334–35 (2001) (emphasis added) (citation omitted).

27.     As noted above, Plaintiffs contend that Raeford's claims are nevertheless timely pursuant to Rule 17 based on its status as the real party in interest as to these claims.[4]  Rule 17 states in pertinent part as follows:

> Every claim shall be prosecuted in the name of the real party in interest . . . .  No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of the real party in interest; and such

---

[4] Although Rule 17 is the basis for Plaintiffs' argument that Raeford's claims are timely, Plaintiffs never actually filed a motion based on Rule 17 seeking leave from the Court to file the Amended Complaint naming Raeford as an additional plaintiff.  The Court observes that this would have been the better practice instead of unilaterally filing the Amended Complaint.  Nevertheless, the Court, in its discretion, will consider the merits of Plaintiffs' Rule 17 argument.

ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

N.C. R. Civ. P. 17(a).

28. Our Supreme Court applied Rule 17(a) in *Burcl v. North Carolina Baptist Hosp., Inc.*, 306 N.C. 214, 228 (1982). The plaintiff in *Burcl* initiated a wrongful death action within the two-year limitations period "in her capacity as a foreign administrator of [the] decedent's estate[.]" *Id.* at 215–16. The plaintiff alleged that she was duly qualified to serve as the administrator of the plaintiff's estate but was unaware that she was likewise required to be appointed in North Carolina as the administrator of the estate. *Id.* at 216. She subsequently obtained the necessary qualification and moved to file a new pleading but did not do so until after the expiration of the applicable limitations period. *Id.* at 216–17. The Supreme Court held that pursuant to Rule 15 and Rule 17, the plaintiff's supplemental pleading related back to the filing date of her original pleading. *Id.* at 230. The Supreme Court noted that the "Defendants had full notice of the transactions and occurrences upon which this wrongful death claim is based" and would not be prejudiced by a new pleading establishing the plaintiff's proper qualifications. *Id.*

29. Although there is no genuine dispute as to the fact that Raeford is the real party in interest to assert declaratory judgment and breach of contract claims against the Unassigned Insurers in light of the Court's 1 November 2021 Order and Opinion, this case nevertheless presents a unique procedural scenario regarding the application of Rule 17. At issue here are claims that were asserted against multiple defendants in the original Complaint, and the Court has previously ruled that some

of those claims were properly asserted by the original named plaintiff (Brakebush) whereas others could only be asserted by Raeford. As such, Plaintiffs do not seek to simply substitute Raeford for Brakebush as the sole plaintiff in this lawsuit. Rather, they seek leave to have Brakebush and Raeford serve as co-plaintiffs for the remainder of this action. In addition, the Court must determine whether the circumstances surrounding Plaintiffs' failure to name Raeford as a plaintiff—or as a co-plaintiff—in the original Complaint precludes the application of Rule 17.

30. Neither the parties' briefs nor the Court's own research has disclosed any North Carolina case that has addressed the applicability of Rule 17 on facts similar to those presented here. Our Supreme Court has stated that the consideration of federal cases may be helpful to North Carolina courts in interpreting Rule 17. *See Burcl*, 306 N.C. at 224; *see also* N.C. R. Civ. P. 17, Comment ("The rule as presented here tracks the federal rule[.]"). For this same reason, it is likewise instructive to examine relevant cases from other states that have enacted similar or identical versions of Rule 17. *Holloway v. Wachovia Bank & Trust Co., N.A.*, 339 N.C. 338, 346 (1994) (citation omitted) ("[A]s our rules are derived from the federal rules, which have been adopted by several other states as well, we look for guidance to authorities on the federal rules and decisions from other jurisdictions using the same rules.").

31. As an initial matter, the Court notes that the Advisory Committee for the Federal Rules of Civil Procedure has stated that Rule 17 "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an

understandable mistake has been made." Fed. R. Civ. P. 17 Advisory Committee Notes (1966).

32. Courts in other jurisdictions that have determined whether to apply Rule 17 in somewhat analogous circumstances have looked at factors such as whether the plaintiff's actions were the result of a tactical decision as opposed to a genuine oversight and whether allowing the substitution of the real party in interest would prejudice the defendant. *See, e.g., Esposito v. United States*, 368 F.3d 1271, 1276 (10th Cir. 2004) (cleaned up) ("[O]ur cases focus primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and on whether the defendant was prejudiced thereby."); *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (cleaned up) ("[M]ost courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult.")

33. A number of courts have adopted the framework employed by the Second Circuit in *Advanced Magnetics v. Bayfront Partners*, 106 F.3d 11 (2nd Cir. 1997). In that case, a corporation brought a lawsuit, in part, in its capacity as an assignee of claims from the corporation's shareholders. *Id*. at 14. The corporation subsequently moved to amend its complaint to add the individual shareholders as plaintiffs when it became apparent that the defendants intended to challenge the effectiveness of the assignment of claims to the corporation. *Id*. at 14. The trial court denied the motion

to amend and held that the attempted assignment of claims had no legal effect. *Id.* at 14–15.

34.    The Second Circuit agreed that the assignments had not been properly effectuated but held that the trial court had improperly denied the motion to amend because Rule 17(a) allowed for a substitution of the parties under these circumstances. *Id.* at 18–21. The Second Circuit noted that "[a]lthough the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of the incorrect party . . . there should plainly be no dismissal where substitution of the real party in interest is necessary to avoid injustice." *Id.* at 20 (cleaned up). In reaching this result, the Second Circuit relied upon the fact that the amendment itself was merely a technical substitution of the proper plaintiffs, the absence of bad faith or any deliberate or tactical strategy in the plaintiff's failure to originally name the proper party, and the lack of prejudice to the defendants. *Id.* at 20–21.

35.    Here, the Court concludes that a consideration of these same factors supports a finding that the substitution of Raeford for Brakebush is proper as to the breach of contract and declaratory judgment claims alleged in the original Complaint against the Unassigned Insurers. The legal theory and factual basis for the breach of contract and declaratory judgment claims brought against the Unassigned Insurers remain unchanged. Indeed, the substitution of Raeford as a plaintiff is wholly consistent with the position that Defendants have taken throughout this litigation—namely, that Raeford, rather than Brakebush, is the real party in interest

as to these claims given Brakebush's failure to obtain written consent to the assignment from the Excess Insurers. Moreover, Brakebush was not dilatory in filing its Amended Complaint, doing so only 39 days after the Court's 1 November 2021 Order and Opinion.

36. In addition, the Court is unpersuaded that Plaintiffs acted in bad faith by naming Brakebush as the sole Plaintiff in the original Complaint. The legal validity of the assignments was vigorously litigated by the parties in the original motion to dismiss. In ultimately ruling on this issue in its 1 November 2021 Order and Opinion, the Court was required to resolve a number of complex issues in order to reach its determination as to the effectiveness of the assignment. In so doing, the Court rejected the categorical arguments asserted by Defendants that the assignment was invalid under *all* of the policies at issue and ultimately was required to conduct a separate analysis of the pertinent language contained in each of the eight policies at issue in order to conclude whether the assignment was valid under each respective policy. Thus, the Court finds there was clearly a "semblance of [a] reasonable basis" for only suing in Brakebush's name. *See Advanced Magnetics*, 106 F.3d at 20 (cleaned up).

37. The Court is also unable to discern any prejudice to Defendants by allowing Raeford to be substituted for Brakebush as the plaintiff as to the breach of contract and declaratory judgment claims against the Unassigned Insurers. As noted above, the factual and legal basis for these claims remains unchanged, and Defendants have failed to make any plausible argument how they are prejudiced.

38.     However, the Court agrees with Defendants that Raeford is not entitled to assert *new* claims against the Unassigned Insurers—that is, claims that were not contained in the original Complaint and therefore cannot logically be deemed to "relate back" to that pleading. For this reason, the new unjust enrichment claim contained in the Amended Complaint would subject Defendants to a new theory of liability and will not be permitted.[5] Therefore, that claim is dismissed.[6]

39.     In sum, the Court is satisfied that allowing Raeford to assert the declaratory judgment and breach of contract claims originally brought by Brakebush against the Unassigned Insurers is consistent with the purposes underlying Rule 17 and with principles of fairness. The Court therefore concludes, in its discretion under Rule 17, that Raeford's claims for declaratory judgment and breach of contract shall be allowed to proceed. Defendants' Motion to Dismiss those claims is therefore DENIED. However, Defendants' Motion to Dismiss Raeford's claim for unjust enrichment is GRANTED.

## II.     Standing of Brakebush to Assert Bad Faith and UDTP Claims

40.     In their second argument, Defendants seek dismissal of Brakebush's claims for bad faith and unfair and deceptive trade practices (Counts V and VI) in the Amended Complaint. Because their argument is based on the same grounds that

---

[5] However, Defendants have failed to convince the Court that the damages sought by Raeford in the Amended Complaint associated with the breach of contract cause of action likewise constitute a new "claim" that should not be deemed to relate back under Rule 17.

[6] To the extent Plaintiffs contend that Raeford's claim for unjust enrichment should nevertheless be allowed to proceed under theories of either equitable tolling or equitable estoppel, the Court has carefully considered Plaintiffs' arguments and concludes that these arguments lack merit.

they asserted in seeking identical relief in their motion to dismiss Brakebush's original Complaint, Defendants have also filed a Motion to Reconsider pursuant to Rule 54(b).

41. As an initial matter, the Court notes that the Motion to Reconsider is technically moot. This is so because the Court's prior ruling on this issue addressed the legal sufficiency of the claims for bad faith and unfair and deceptive trade practices contained in Brakebush's original Complaint. Based on the filing of Plaintiffs' Amended Complaint, the claims contained in Brakebush's original pleading no longer have any legal significance. Defendants' Motion to Reconsider is therefore DENIED as moot. *See Krawiec v. Manly*, 2015 NCBC LEXIS 85, at **5 (N.C. Super. Ct. Aug. 24, 2015) (citations omitted) ("[T]he filing of [an] Amended Complaint renders moot Defendants' Motions to Dismiss the Original Complaint.").

42. In their Motion to Dismiss, Defendants contend that new case law demonstrates Brakebush's lack of standing to assert claims for bad faith and UDTP against the Assigned Insurers.

43. In its 1 November 2021 Order and Opinion, the Court concluded that Brakebush did, in fact, possess standing to assert these claims. (ECF No. 93, at ¶ 83.) In its analysis, the Court examined the relevant cases decided under North Carolina law in existence at that time. (ECF No. 93, at ¶¶ 73–81.) The Court noted that the few cases addressing the issue of when an insurer can be sued for bad faith or UDTP by a party other than the named insured in connection with the handling of an insurance claim had all arisen in the context of third-party—rather than first-party—

coverage.[7]  (ECF No. 93, at ¶ 76.)  Given (1) Defendants' inability to cite case law on this issue from North Carolina courts similarly rejecting a plaintiff's standing argument in the context of first-party insurance coverage (which is the type of coverage that exists in the present case); and (2) the absence of public policy reasons to deny Brakebush standing under these circumstances, the Court concluded that Brakebush possessed standing to bring these claims.  (ECF No. 93, at ¶¶ 76–83.)  The Court further noted that "to the extent that privity between Brakebush and the Excess Insurers is required in order for Brakebush to possess standing to assert a bad faith or UDTP claim, such privity arguably exists as a result of the assignment from Raeford to Brakebush."  (ECF No. 93, at ¶ 79 n.10.)

44.    Since the Court issued its prior Order and Opinion, however, the United States Court of Appeals for the Fourth Circuit issued its opinion in *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825 (4th Cir. 2021), which analyzes this same legal issue on facts very similar to those in the present case.

45.    Federal decisions on an issue of North Carolina law are, of course, not binding on this Court.  Nevertheless, North Carolina courts are permitted to consider such decisions to the extent they are instructive.  *Sykes v. Health Network Solutions, Inc.*, 2013 NCBC LEXIS 50, at **19 (N.C. Super. Ct. Nov. 25, 2013) (citing *Rose v.*

---

[7] "In the first-party situation, the insurance covers a claim directly made by the insured and examples of first-party coverage are life, health, disability, property, and fidelity insurance. In the third-party situation, a liability claim is brought by a third party which triggers the insurer's duty to defend and indemnify.  Examples of third-party coverage are professional malpractice insurance and commercial liability insurance."  8 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 90.1 (2021).

*Vulcan Materials Co.*, 282 N.C. 643, 655 (1973) ("This court is not bound by federal precedent, but may examine federal decisions in search of potentially persuasive authority."); *see also Brown v. Centex Homes*, 171 N.C. App. 741, 744 (2005) (citations omitted) ("Although we are not bound by federal case law, we may find their analysis and holdings persuasive."). The Court deems the opinion in *Skyline Restoration* to be helpful in its consideration of the unique issue presented here as to which—it bears repeating—no North Carolina court has previously had occasion to address. *Skyline Restoration* expressly rejects Plaintiffs' theory of standing, holding that an assignee of insurance proceeds arising out of a first-party insurance policy lacks the ability to sue the assignor's insurer for UDTP because the assignee under such circumstances is neither the insured under the policy nor in privity with the insurer.

46. In *Skyline Restoration*, a church retained a remediation services company, Skyline Restoration, Inc. ("Skyline"), after significant wind damage occurred to the church's property. *Skyline Restoration*, 20 F.4th at 827. As part of the remediation agreement, Skyline received an assignment of the right to collect any proceeds from the church's insurance policy regarding the damage. *Id.* at 828. Skyline subsequently billed the church for $75,000. *Id.* However, neither the church nor the insurer paid Skyline for its services. *Id.* Skyline perfected a lien against the church and submitted claims with the insurer, which were never paid. *Id.* The church subsequently filed for bankruptcy and instituted an adversary proceeding against Skyline. *Id.* Skyline brought a lawsuit against the church's insurer in which

it asserted, *inter alia*, a claim for unfair claim settlement practices under Chapter 75. *Id*.

47.     The Fourth Circuit held that Skyline lacked the ability under North Carolina law to assert its UDTP claim based on the general prohibition in this state on such claims unless the plaintiff is either an insured or in privity with the insurer. *Id*. at 834–35. The Fourth Circuit concluded that under the facts of the case no privity existed between Skyline and the church. *Id*. at 835.

48.     The Court deems *Skyline Restoration* to be instructive in several respects. It is the first case applying North Carolina law that addresses the issue of whether the general rule requiring that a party bringing such claims against an insurer be either the insured itself or one in privity with the insurer applies equally in the context of first-party coverage. Moreover, the Court likewise finds the Fourth Circuit's analysis helpful on the issue of whether privity exists between an assignee in the position of Brakebush (who has merely been assigned the right to collect insurance proceeds) and the insurers of its assignor (here, the Excess Insurers). Indeed, a review of case law from other jurisdictions fails to show general support for the proposition that privity exists under such circumstances where, as here, the assignment is limited to the right to receive proceeds under the policy. Although perhaps a different conclusion would result had Raeford assigned the entire insurance policies to Brakebush, that is not what happened.[8]

---

[8] Plaintiffs contend that *Skyline Restoration* is inapposite because in that case an adversarial relationship existed between the assignee and assignor whereas here the interests of Brakebush and Raeford are not adverse. Although this is true, it does not affect the legal

49. A ruling that Brakebush possesses standing to bring bad faith and UDTP claims against the Assigned Insurers under these circumstances would constitute a significant expansion of the existing law in North Carolina. Although admittedly the public policy concerns previously cited by North Carolina courts as grounds for refusing to allow such claims by adverse third-party claimants do not appear to exist on the present facts, the Court nevertheless concludes that any such change in the law must come from North Carolina's appellate courts.

50. Therefore, Defendants' Motion to Dismiss Brakebush's claims for bad faith and UDTP is GRANTED, and those claims are DISMISSED without prejudice.[9]

**CONCLUSION**

THEREFORE, it is hereby ORDERED that Defendants' pending motions are GRANTED, in part, and DENIED, in part, as follows:

1. Defendants' Motion to Dismiss Raeford's claims for declaratory judgment and breach of contract is DENIED.

2. Defendants' Motion to Dismiss Raeford's claim for unjust enrichment is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

3. Defendants' Motion to Dismiss Brakebush's claims for bad faith and UDTP is GRANTED, and those claims are DISMISSED WITHOUT PREJUDICE.

---

issue of whether privity exists between an assignor's insurer and an assignee who has solely been assigned the right to receive proceeds under the policy.

[9] "A dismissal for lack of subject matter jurisdiction is generally a dismissal without prejudice." *Button v. Level Four Orthotics & Prosthetics, Inc.*, 2020 NCBC LEXIS 30, at **21 fn. 6 (N.C. Super Ct. Mar. 13, 2020) (cleaned up).

4. Defendants Maxum, Ironshore, Novae, Hallmark, and Hudson's Motion to Reconsider is DENIED AS MOOT.

SO ORDERED, this the 11th day of May, 2022.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases